UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHUCH CONGDON, ET AL.,** <br><br> Plaintiffs, <br><br> v. <br><br> **UBER TECHNOLOGIES, INC., ET AL.,** <br><br> Defendants. | Case No. 16-cv-02499-YGR <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL AND STAY; DENYING AS MOOT MOTION TO CERTIFY CLASS** <br><br> Re: Dkt. Nos. 50, 51 |

Plaintiffs bring this putative class action complaint against defendants Uber Technologies, Inc. and its wholly owned subsidiaries (collectively, "Uber") for alleged breaches of contract related to the charging of certain fees. (Dkt. No. 49, the "FAC.") Relevant to the instant motion, certain plaintiffs entered into arbitration agreements with Uber. Specifically, plaintiffs Bailey, Congdon, Martinez, Scheinkman, Torres, Webber, Winters, and Zuniga signed agreements and did not opt out of the arbitration provision within said agreements (the "Non-Opt-Out Plaintiffs").[1]

Now before the Court is defendants' motion to compel the Non-Opt-Out Plaintiffs into arbitration and to stay the case as to the Opt-Out Plaintiffs pending the completion of the arbitration proceedings. (Dkt. No. 50.) Concurrently, plaintiffs have moved to certify an issues class pursuant to Federal Rule of Civil Procedure 23(c)(4). Having carefully reviewed the pleadings, the papers submitted, and oral arguments from counsel on December 6, 2016, and for

---

[1] Plaintiffs alleged that both Scheinkman and Zuniga opted out of the arbitration provision. Uber has averred that neither opted out in a timely manner and are therefore subject to arbitration. (Dkt. No. 50-1, Coleman Decl. ¶¶ 11(h), (*l*).) At oral argument, plaintiffs conceded the same. The remaining plaintiffs, i.e., Clark, Cowden, Rooijackers, and Rosenberg (the "Opt-Out Plaintiffs") entered into contracts with Uber but timely opted out of the arbitration provisions and are therefore not bound by the same.

the reasons set forth more fully below, the Court **GRANTS IN PART AND DENIES IN PART** Uber's motion as follows: The Court **COMPELS** Non-Opt-Out Plaintiffs into arbitration and **STAYS** the action as to the same as set forth below. The Court **DENIES** Uber's motion to stay the case as to the Opt-Out Plaintiffs. The Court **DENIES** plaintiffs' motion for class certification as moot.

**I.    BACKGROUND**

Uber is a technology company that, via a mobile application, connects riders looking for transportation to drivers, such as plaintiffs. (Coleman Decl. ¶ 3.) Each plaintiff in this action entered into certain agreements with Uber to utilize Uber's application. Under these agreements, plaintiffs were considered independent contractors, and, by the express terms of the agreements, plaintiffs were "the sole owners of the fares that riders pay, and all fare payments from riders to Uber are deemed payments made directly from riders to drivers." (FAC ¶ 3.) Uber, in turn, earns its money by charging "drivers a percentage-of-fare-based 'service fee' for the service it provides them, but Uber cannot charge drivers any more than its contract with them permits." (*Id.* at ¶ 4.) Generally, plaintiffs allege that between April 2014 and November 2015 (the "Class Period"), Uber breached its agreements by charging drivers additional fees that were not contractually authorized. (*Id.* at ¶¶ 42–54.)

Relevant to the current motion, each of the agreements entered into by the plaintiffs included an arbitration provision. The following facts relate to the same:

Four separate agreements are at issue in this action: (i) 2013 Transportation Provider Service Agreement (the "2013 Agreement"); (ii) June 2014 Rasier Software Sublicense & Online Service Agreement (the "June 2014 Agreement"); (iii) November 2014 Software License and Online Services Agreement (the "November 2014 Agreement"); and (iv) the December 2015 Technology Services Agreement (the "December 2015 Agreement"). (*See* FAC Exhibits B–D.) Each of these agreements contained an arbitration provision, which, in relevant part, provides:[2]

---

[2] Importantly, except for specific details regarding arbitration costs, plaintiffs do not allege that the arbitration provisions across the four agreements differ in any meaningful way. (FAC ¶¶ 60–85.) Thus, the Court will refer to the December 2015 Agreement unless otherwise specified.

2

> Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before any forum other than arbitration, with the exception of proceedings that must be exhausted under applicable law before pursuing a claim in a court of law or in any forum other than arbitration. Except as it otherwise provides, this Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.
>
> Except as provided in Section 15.3(v), below, regarding the Class Action Waiver, such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge. However, as set forth below, the preceding sentences shall not apply to disputes relating to the interpretation or application of the Class Action Waiver or PAGA Waiver below, including their enforceability, revocability or validity.

(Dkt. No. 50-1 at 116.)

Recently, the Ninth Circuit held that the arbitration provisions and class action waivers within Uber's 2013 Agreement, June 2014 Agreement, and November 2014 Agreement were valid and enforceable. (FAC ¶ 63; *see also Mohamed v. Uber Techs., Inc.*, 836 F.3d 1102, 1112 (9th Cir. 2016)). Additionally, the Ninth Circuit held that the arbitration provisions effectively delegated the authority to decide on issues of arbitrability to the arbitrator. The Ninth Circuit reversed the district court and remanded with instructions that the district court order the parties "to arbitrate their dispute over arbitrability." *Mohamed*, 836 F.3d at 1112.

Plaintiffs do not contest the applicability the Ninth Circuit's decision to all the agreements at issue here. Rather, plaintiffs claim that the Ninth Circuit did not address whether a separate clause of the arbitration provision allows them to bring their breach of contract claims in court rather than arbitration. Specifically:

> iv. <u>Starting the Arbitration</u>
>
> . . . .
>
> A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.

(*See, e.g.*, Dkt. No. 50-1 at 118.) Plaintiffs further allege that under any of the agreements,

3

1  plaintiffs would be required to share certain costs of arbitration regardless of whether they
2  ultimately prevail.  (FAC ¶¶ 76–78.)  Thus, plaintiffs argue, because the "nonrecoverable filing
3  fees and arbitration costs (depending on the agreement in effect) are more than the full measure of
4  economic loss for the vast majority of class members in this case [] the award to which each such
5  driver is entitled will 'be rendered *ineffectual*' (emphasis added) in individual arbitrations." (*Id.* at
6  ¶ 81.)  On this basis, plaintiffs oppose Uber's motion to compel.

## II. LEGAL FRAMEWORK

The Federal Arbitration Act allows a district court to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement.  9 U.S.C. § 3.  A party may bring a motion in the district court to compel arbitration.  9 U.S.C. § 4.  In ruling on a motion to compel, the court's role is typically limited to determining whether:  (i) an agreement exists between the parties to arbitrate; (ii) the claims at issue fall within the scope of the agreement; and (iii) the agreement is valid and enforceable.  *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

"[U]nlike the arbitrability of claims in general, whether the court or the arbitrator decides arbitrability is an issue for judicial determination unless the parties *clearly and unmistakably provide otherwise.*"  *Mohamed*, 836 F.3d at 1108 (internal quotations and citations omitted) (emphasis in original).  "In other words, there is a presumption that courts will decide which issues are arbitrable; the federal policy in favor of arbitration does not extend to deciding questions of arbitrability."  *Id.* (internal quotations and citation omitted).

Ultimately, "[b]oth the arbitrability of the merits of a dispute and the question of who has the primary power to decide arbitrability depend on the agreement of the parties."  *Goldman, Sachs & Co. v. Reno*, 747 F.3d 733, 738 (9th Cir. 2014) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *see also Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013).  Such agreements may delegate such power to the arbitrator rather than the courts.  *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or

4

whether their agreement covers a particular controversy."). "Clear and unmistakable evidence of an agreement to arbitrate arbitrability 'might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so.'" *Mohamed*, 836 F.3d at 1108–09 (quoting *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)).

In this regard, the Ninth Circuit has found certain language to be a "clear and unmistakable" expression of the parties' intention for an arbitrator, rather than a court, to decide arbitrability. Thus: In *Momot*, the express delegation was as follows:

> If a dispute arises out of or relates to this Agreement, the relationships that result from this agreement, the breach of this Agreement or the validity or application of any of the provisions of this Section 4, and, if the dispute cannot be settled through negotiation, the dispute shall be resolved exclusively by binding arbitration.

*Momot*, 652 F.3d at 988 (quoting exhibit). The Ninth Circuit found the arbitration provision giving rise to *Mohamed* even "more expansive":

> Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability, or validity of the Arbitration Provision or any portion of the Arbitration Provision.

*Mohamed*, 836 F.3d at 1107 (citing exhibit).

### III. DISCUSSION

#### A. Motion to Compel Arbitration

Uber moves the court to compel the Non-Opt-Out Plaintiffs into arbitration. The parties agree that the Ninth Circuit's decision in *Mohamed* is applicable to the agreements at issue here. Thus, plaintiffs concede that, in light of such decision, they cannot "meaningfully take issue with the general enforceability of the arbitration and delegation clauses included in Uber's agreements." (Dkt. No. 60 at 7.) Plaintiffs further concede that the agreements contain a delegation clause, which the Ninth Circuit held "clearly and unmistakably delegated the question of arbitrability to the arbitrator." (*Id.* at 10.) The Court, therefore, need not address the same.

However, plaintiffs maintain that this Court should not compel the Non-Opt-Out Plaintiffs into arbitration because the agreements themselves guarantee a right to "effectual vindication," which would be thwarted by arbitration. Plaintiffs rely on the following provision:

      iv. Starting the Arbitration

> . . . .
>
> A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.

(*See, e.g.*, Dkt. No. 50-1 at 118.) On the basis of such provision, plaintiffs argue that the arbitration provision "carves-out" such issues, and thus, the Court must decide whether the relief sought by the Non-Opt-Out Plaintiffs would be rendered ineffectual. Specifically, plaintiffs note that, although the per-ride damages in this action would be nominal, because the drivers must share the costs of arbitration with Uber, the relief they seek would be rendered ineffectual. For instance, the December 2015 Agreement requires the drivers to split all costs of arbitration that are of the "type of fee or expense" that would be incurred in a court. (Dkt. No. 52-5 at § 15.3(vi).) The contracts preceding the December 2015 Agreement required drivers to split all costs of arbitration with Uber. (*See* Dkt. No. 52-3 at 14; Dkt. No. 52-4 at § 15.3(vi).) Accordingly, plaintiffs contend that the instant dispute falls within the "carve-out" provided by the agreements.

      Here, however, Uber has agreed to pay the full costs of arbitration for plaintiffs. (Dkt. No. 50-1 at 12, Declaration of Colman ¶ 16.) The Ninth Circuit in *Mohamed* squarely addressed this issue: "However, Uber has committed to paying the full costs of arbitration. So long as Uber abides by this commitment, the fee term in the arbitration agreement presents [p]laintiffs with no obstacle to pursuing vindication of their federal statutory rights in arbitration." *Mohamed*, 836 F.3d at 1112; *see also Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 182–83 n.10 (4th Cir. 2013) ("A party's agreement to pay all arbitration costs, when made in a timely manner such as before a district court has ruled on the enforceability of the arbitration clause, 'moots' the issue and 'foreclos[es] the possibility that the [opposing party] could endure any prohibitive costs in the arbitration process." (citing cases in the Seventh, Fifth, and First Circuits)). Plaintiffs contend that *Mohamed* is inapposite because the Ninth Circuit's discussion related to statutory effective vindication rights rather than contractually-based effective vindication rights at issue here. However, plaintiffs offer no support or sound reasoning why such a distinction would be meaningful in this regard. Accordingly, as the Ninth Circuit held, so long as Uber abides by its

1  commitment, the Non-Opt-Out Plaintiffs are faced with no obstacles in the effective vindication of
2  their rights, and the Court need not address whether the fee term would create such obstacles
3  otherwise.[3]

4  Thus, the Court **GRANTS** Uber's motion and **COMPELS** the Non-Opt-Out Plaintiffs into
5  arbitration. The Court further **STAYS** the entire action as to the Non-Opt-Out Plaintiffs pending
6  arbitration. In light of this decision, the Court **DENIES** as moot plaintiffs' motion for class
7  certification. (Dkt. No. 51.) Each Non-Opt-Out Plaintiffs' claims must be arbitrated individually,
8  and class certification at this juncture is not appropriate. However, the Court is cognizant of the
9  quandary this creates for other potential plaintiffs to whom Uber has made no commitments
10 regarding the payment of arbitration fees and costs. Such plaintiffs must choose between the
11 proverbial Scylla and Charybdis: either they initiate (i) arbitration themselves without
12 commitments from Uber to pay arbitration costs or (ii) pay court filing fees and hope to obtain
13 similar commitments from Uber. Thus, the Court will permit further amendment of the FAC in
14 this action to add additional named plaintiffs as necessary. Uber can then move to compel the
15 same to arbitrate and either Uber can commit to paying their arbitration fees or the Court will be in
16 a position to decide on the merits of the effective vindication argument, potentially on a class wide
17 basis.

### B. Motion to Stay Action Pending Arbitration for the Opt-Out Plaintiffs

19 Having decided in favor of Uber in compelling the Non-Opt-Out Plaintiffs into arbitration,
20 the Court must then decide Uber's motion to stay all proceedings as to the Opt-Out Plaintiffs
21 pending the completion of such arbitration.

22 "If any suit or proceeding be brought in any of the courts of the United States upon any
23 issue referable to arbitration . . . [the court] shall on application of one of the parties stay the trial

---

[3] Uber additionally argues that the cited clause in the arbitration provisions does not constitute a carve-out that would allow plaintiffs to challenge the arbitrability of a dispute. Rather, by the very terms of such clause, it is "expressly *limited* to those circumstances in which a party seeks 'provisional remedies,' like preliminary injunctions and temporary restraining orders. (Reply 5.) Because the Court finds that, given the circumstances, relief would not be rendered ineffectual in any event, the Court need not decide this matter at this juncture.

7

of the action until such arbitration has been had." 9 U.S.C. § 3. "A motion to stay, therefore, is mandatory and must be granted as to all matters within the scope of the arbitration agreement. It is, however, within a district court's discretion whether to stay, for 'considerations of economy and efficiency,' an entire action, including issues not arbitrable, pending arbitration." *BrowserCam, Inc. v. Gomez, Inc.*, No. 08-CV-02959-WHA, 2009 WL 210513, at *3 (N.D. Cal. Jan. 27, 2009) (quoting *United States ex rel. Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985)). The same holds true with respect to claims involving non-signatories to an arbitration agreement. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n. 23 (1983) ("[I]t may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket."). A "district court's inherent, discretionary power to control its proceedings should promote economy of time and effort for itself, for counsel, and for litigants." *Roderick v. Mazzetti & Assocs., Inc.*, No. 04-CV-2436-MHP, 2004 WL 2554453, at *3 (N.D. Cal. Nov. 9, 2004) (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). "Where a stay is proposed, the court should weigh the competing interests that will be affected, including: the possible damage which may result from granting the stay, the hardship or inequity which a party may suffer in being required to go forward, and 'the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.'" *Id.* (citing *CMAX*, 300 F.2d at 268); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) ("How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.").

Here, plaintiffs argue that a stay is not warranted because there is no justification for delaying judicial resolution of the action with regards to the plaintiffs who opted out of the arbitration provision. Specifically, plaintiffs argue that although the claims of the Non-Opt-Out Plaintiffs and the Opt-Out Plaintiffs involve the same operative facts—i.e. the interpretation of the agreements and whether Uber breached such agreements—the resolution of such claims in the arbitral proceedings have no bearing on the resolution of such claims in court. The Court agrees.

8

The cases cited by Uber do not persuade. In large part, they involve situations in which the court proceedings could impact the rights and obligations of the parties subject to arbitration vis-a-vis the claims subject to arbitration. For instance, in *Waste Management, Inc. v. Residuos Industrialez Multiquim, S.A. de C.V.*, 372 F.3d 339 (5th Cir. 2004), the Fifth Circuit reversed a denial of stay where the litigation and arbitration were "inherently inseparable" because the singular plaintiff only "suffered one alleged harm" and the question was "who, if anyone, should reimburse" the plaintiff. *Id.* at 345; *see also Hill v. G.E. Power Sys., Inc.*, 282 F.3d 343, 347–48 (5th Cir. 2002) (finding plaintiff's claims against signatory defendant to be inseparable from claims against non-signatory defendant and that allowing the claims against one to proceed would "undermine the arbitration proceedings . . . thereby thwarting the federal policy in favor of arbitration"); *AgGrow Oils, L.L.C. v. Nat'l U. Fire Ins. Co. of Pittsburgh*, 242 F.3d 777, 782–83 (8th Cir. 2001) (stating that discretionary stay may be warranted where plaintiff agreed to arbitrate with third party, which had agreed to indemnify the defendant in the instant action).[4] The most analogous case cited by Uber is *Ballard v. Corinthian Colleges, Inc.*, No. 06-CV-5256-FDB, 2006 WL 2380668, at *2 (W.D. Wa. Aug. 16, 2006), where the court stayed proceedings because the "claims asserted in the complaint [were] brought by [p]laintiffs jointly and are grounded in identical facts and legal theories." The court in *Ballard* explained that simultaneous prosecution of the claims "would clearly be a waste of judicial resources" and could lead to a "duplication of efforts, as well as the risk of inconsistent decisions and inefficiencies." *Id.*

This Court, however, finds that proceeding with the litigation as to the Opt-Out Plaintiffs in this case would not result in a waste of judicial resources. The parties do not dispute that, regardless of the outcome of the arbitration, the claims of the Opt-Out Plaintiffs will need to be litigated in this court. Uber has not presented the Court with any authority indicating that the decision of the arbitrators with respect to the Non-Opt-Out Plaintiffs would in some way bind the

---

[4] Uber also cites *Moss v. McLucas*, No. 12-CV-2368-BEN, 2013 WL 1680483, at *5 (S.D. Cal. Apr. 16, 2013) for the proposition that a court may stay proceedings to avoid any conflicting rulings with parallel arbitral proceedings. However, such order was based on California Code of Civil Procedure § 1281.2 which authorized that very action whenever there "is a possibility of conflicting rulings on a common issue of law or fact." Such statute does not apply here.

9

Court with respect to the Opt-Out Plaintiffs. Such a result would, in any event, frustrate the intent of the Opt-Out Plaintiffs in choosing not to arbitrate their claims in the first place. Additionally, Uber has presented no convincing arguments that proceeding with the litigation as to the Opt-Out Plaintiffs would in some way negatively impact or undermine the parallel arbitration proceedings, or would in some way prejudice Uber. To the contrary, Uber all but concedes that proceeding with the Opt-Out Plaintiffs' claims would not do so.[5] Uber cannot have its cake and eat it, too. They cannot, on the one hand, argue that the parties intended individualized adjudication of each plaintiff's claims, and in the same breath, argue that certain individual's actions should be impacted by parallel litigation.

Further, as other courts have acknowledged, the potential for inconsistent results in this forum is insufficient to overcome such interests. *See, e.g.*, *Portland Gen. Elec. Co. v. Liberty Mutual Ins. Co.*, No. 16-CV-495-HZ, 2016 WL 4059658, at *7 (D. Or. July 27, 2016) (explaining that inconsistent results can occur "because the relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement" (citing *Moses H. Cone*, 460 U.S. at 20)).

Accordingly, the Court **DENIES** Uber's motion to stay the claims of the Opt-Out Plaintiffs. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 11-CV-0058-SI, 2011 WL 4017961, at *7 (N.D. Cal. Sept. 9, 2011) (denying request to stay entire action pending arbitration where stay "will have little benefit").

**IV.   CONCLUSION**

For the foregoing reasons, the Court **ORDERS** as follows: The Court **GRANTS** Uber's motion to compel the Non-Opt-Out Plaintiffs into arbitration and **STAYS** the action as to the same in its entirety, except that the Court will allow further amendment of the FAC to include additional

---

[5] Uber instead argues that such showings are unnecessary in the Court's determination of whether it should exercise discretion to issue a stay pending the completion of arbitration proceedings. However, such considerations are relevant in the overall analysis of determining whether the Court should exercise its discretion in staying the action, particularly where the interests of other parties are at stake. *See Landis*, 299 U.S. at 255 (holding that the "suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some [sic] one else").

plaintiffs. *Dist. Council 16 Int'l U. of Painters and Allied Trades v. LML Enters., Inc.*, No. 13-CV-565-SI, 2013 WL 3802903, at *1 (N.D. Cal. July 18, 2013) ("[C]ourts have discretion under 9 U.S.C. § 3 to dismiss or stay claims that are subject to an arbitration agreement." (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988))). The Court **DENIES** plaintiffs' motion for class certification as moot. The Court **DENIES** Uber's motion to stay the proceedings as to the Opt-Out Plaintiffs.

The Court further **SETS** a Case Management Conference for **Monday, February 13, 2017** at **2:00 p.m.** in the Federal Building, 1301 Clay Street, Oakland, California, Courtroom 1. By **February 6, 2017**, the parties must file a joint case management statement in compliance with the Civil Local Rules of the Northern District of California and this Court's Standing Order in Civil Cases.

This Order terminates Docket Numbers 50 and 51.

**IT IS SO ORDERED.**

Dated: December 8, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**