John G. Crabtree, *pro hac vice*
jcrabtree@crabtreelaw.com
Charles M. Auslander, *pro hac vice*
causlander@crabtreelaw.com
Brian C. Tackenberg, *pro hac vice*
btackenberg@crabtreelaw.com
CRABTREE & AUSLANDER
240 Crandon Boulevard, Suite 101
Key Biscayne, Florida 33149
Telephone (305) 361-3770 Fax: (305) 437-8118

Andrew A. August, SBN 112851
aaugust@bgrfirm.com
BROWNE GEORGE ROSS, LLP
101 California Street, Suite 1225
San Francisco, California 94111
Telephone (415) 391-7100 Fax (415) 391-7198
Counsel for Plaintiffs Chuck Congdon, *et al.*[1]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

Case No. 4:16-cv-02499-YGR

CHUCK CONGDON, RYAN COWDEN, ANTHONY MARTINEZ, JASON ROSENBERG, and JORGE ZUNIGA, on behalf of themselves and all others similarly situated,

　　*Plaintiffs*,

*vs.*

UBER TECHNOLOGIES, INC., a Delaware corporation, RASIER, LLC, a Delaware corporation, and RASIER-CA, LLC, a Delaware corporation,

　　*Defendants*.

CLASS ACTION

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO CERTIFY DAMAGES CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO CERTIFY CLASS

Date:　October 31, 2017
Time: 2:00 P.M.
Courtroom: 1
Judge: Hon. Yvonne Gonzalez Rogers

---

[1] A complete list of the parties represented is set forth on the signature page below.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 31, 2017, or on such date as may be specified by the Court, in the courtroom of the Honorable Yvonne Gonzalez Rogers, United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California, Courtroom 1, Plaintiffs Matthew Clark, Ryan Cowden, Dominicus Rooijackers, and Jason Rosenberg (Plaintiffs), on behalf of themselves and the proposed class, will move for class certification pursuant to Rule 23(b)(3).

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities; the Depositions of Matthew Clark, Ryan Cowden, Dominicus Rooijackers, Jason Rosenberg, Michael Colman, and Alexander Priest; the Declarations of Brian C. Tackenberg, John G. Crabtree, Andrew A. August, and Mark Morrison; and all exhibits to those Depositions and Declarations; the pleadings and papers on file in this action; and on such other written and oral argument as may be presented to the Court.

Dated: August 29, 2017

Respectfully submitted,

/s/ John G. Crabtree
John G. Crabtree

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

John G. Crabtree
Florida Bar No. 886270
Charles M. Auslander
Florida Bar No. 349747
Brian Tackenberg
Florida Bar No. 0107224
CRABTREE & AUSLANDER, LLC
240 Crandon Boulevard, Suite 101
Key Biscayne, Florida 33149
Telephone (305) 361-3770
Fax (305) 437-8118
jcrabtree@crabtreelaw.com
causlander@crabtreelaw.com
gbaise@crabtreelaw.com
btackenberg@crabtreelaw.com
floridaservice@crabtreelaw.com

Andrew A. August
California Bar No.112851
BROWNE GEORGE ROSS, LLP
101 California Street, Suite 1225
San Francisco, California 94111
Telephone (415) 391-7100
Fax (415) 391-7198
aaugust@bgrfirm.com

Mark A. Morrison
California Bar No. 152561
MORRISON AND ASSOCIATES
113 Cherry Street, Unit 34835
Seattle, Washington 98104
Telephone (206) 317-3315
Fax (206) 397-0875
Mark@mpaclassaction.com

*Counsel for Plaintiffs Matthew Clark, Ryan Cowden, Dominicus Rooijackers,
and Jason Rosenberg, individually and on behalf of all others similarly
situated*

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ...................................................................................ii

STATEMENT OF THE ISSUES TO BE DECIDED................................................................ix

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................1

   I.      Background .................................................................................................................1

            *The Underlying Case* ................................................................................................1

            *The Form Contracts Governing Uber's Business Relation with its Drivers* ..............1

            Argument ....................................................................................................................2

   I.      Class to be Certified ..................................................................................................3

   II.     Rule 23 Certification Standards ...............................................................................3

   III.    Rule 23(a) Threshold Requirements.........................................................................5

         a.   Numerosity.........................................................................................................5

         b.   Commonality ......................................................................................................6

         c.   Typicality ...........................................................................................................8

         d.   Adequacy ...........................................................................................................9

         e.   Ascertainability ...............................................................................................11

   IV.    Rule 23 (b)(3) Certification.....................................................................................14

         a.   Predominance ...................................................................................................14

         b.   Superiority .......................................................................................................17

CONCLUSION ......................................................................................................................19

PROOF OF SERVICE.......................................................................................................... 20

MOTION TO CERTIFY ISSUE CLASS
CASE NO. 3:16-cv-02499-YGR

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Cases**                                                                                                                      **Page(s)**

4

*Amchem Products, Inc. v. Windsor,*
521 U.S. 591 (1997) ................................................................................................................14

5

*Bates v. United Parcel Serv.,*
204 F.R.D. 440 (N.D. Cal. 2001)..........................................................................................5

6

7

*Bias v. Wells Fargo & Co.,*
312 F.R.D. 528 (N.D. Cal. 2015)........................................................................................18

8

9

*Blackie v. Barrack,*
524 F.2d 891 (9th Cir. 1975)...............................................................................................16

10

11

*CDF Firefighters v. Maldonado,*
158 Cal. App. 4th 1226 (2008)............................................................................................15

12

*Consol. Rail Corp. v. Town of Hyde Park,*
47 F.3d 473 (2d Cir. 1995)....................................................................................................5

13

14

*Delagarza v. Tesoro Ref. & Mktg. Co.,*
C-09-5803 EMC, 2011 WL 4017967 (N.D. Cal. 2011) .................................................14

15

16

*Dupler v. Costco Wholesale Corp.,*
249 F.R.D. 29 (E.D.N.Y. 2008) .........................................................................................16

17

*Ellsworth v. U.S. Bank, N.A.,*
C 12-02506 LB, 2014 WL 2734953 (N.D. Cal. June 13, 2014) ...............................8, 15

18

19

*Erica P. John Fund, Inc. v. Halliburton Co.,*
563 U.S. 804 (2011) ..............................................................................................................14

20

21

*Ewert v. eBay, Inc.,*
2010 WL 4269259 (N.D. Cal. Oct. 25, 2010) .............................................................15, 19

22

*Haley v. Medtronic, Inc.,*
169 F.R.D. 643 (C.D. Cal. 1996)..........................................................................................4

23

24

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998)........................................................................................5, 18

25

26

*Hanon v. Dataproducts Corp.,*
976 F.2d 497 (9th Cir.1992)..................................................................................................8

27

28

*Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago*,
121 F.R.D. 664 (N.D. Ill. 1988) ................................................................................16

*Hatamian v. Advanced Micro Devices, Inc.*,
14-cv-00226-YGR, 2016 WL 1042502 (N.D. Cal. 2016) .........................................6

*Herrera v. LCS Fin. Servs. Corp.*,
274 F.R.D. 666 (N.D. Cal. 2011) .............................................................................11

*In re First American Corp. ERISA Litig.*,
258 F.R.D. 610 (C.D. Cal. 2009) ...............................................................................8

*In re Med. Capital Secs. Litig.*,
2011 WL 5067208 (C.D. Cal. July 26, 2011) ..........................................................15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
267 F.R.D. 291 (N.D.Cal. 2010) ..............................................................................11

*Keele v. Wexler*,
149 F.3d 589 (7th Cir. 1998) ....................................................................................16

*Leyva v. Medline Indus., Inc.*,
716 F.3d 510 (9th Cir. 2013) ...............................................................................5, 17

*Lymburner v. U.S. Fin. Funds, Inc.*,
263 F.R.D. 534 (N.D. Cal. 2010) .............................................................................16

*Mazonas v. Nationstar Mortgage LLC*,
16-CV-00660-RS, 2016 WL 2344196 (N.D. Cal. May 4, 2016)..............................14

*Mckinnon v. Dollar Thrifty Auto. Group, Inc.*,
12-CV-04457-YGR, 2016 WL 879784 (N.D. Cal. 2016) ...................................10, 11

*Menangerie Prods. v. Citysearch*,
2009 WL 3770668 (C.D. Cal. Nov. 9, 2009) .........................................................8, 16

*Mortimore v. F.D.I.C.*,
197 F.R.D. 432 (W.D. Wash. 2000) .........................................................................16

*Mullins v. Premier Nutrition Corp.*,
13-CV-01271-RS, 2016 WL 1535057 (N.D. Cal. 2016) ..........................................18

*Nguyen v. Radient Pharmaceuticals Corp.*,
287 F.R.D. 563 (C.D. Cal. 2012) ...............................................................................5

*Philliben v. Uber Techs., Inc.*,
14-CV-05615-JST, 2016 WL 4537912 (N.D. Cal. 2016)..........................................11

*Ries v. Arizona Beverages USA LLC,*
287 F.R.D. 523 (N.D. Cal. 2012) ................................................................................................. 11

*Rodriguez v. Farmers Ins. Co. of Arizona,*
CV0906786JGBAJWX, 2013 WL 12109896 (C.D. Cal. Aug. 4, 2013) ..................................... 15

*Sacred Heart Health Systems, Inc. v. Humana Military Healthcare,*
601 F.3d 1159 (11th Cir. 2010) ..................................................................................................... 16

*Schulken v. Washington Mutual Bank,*
2012 WL 28099 (N.D Cal. Jan. 5, 2012) ....................................................................................... 15

*Simpson v. Fireman's Fund. Ins. Co.,*
231 F.R.D. 391 (N.D. Cal. 2005) ..................................................................................................... 8

*Smilow v. Southwestern Bell Mobile Systems, Inc.,*
323 F.3d 32 (1st Cir. 2003) ........................................................................................................... 16

*Staton v. Boeing Co.,*
327 F.3d 938 (9th Cir. 2003) ........................................................................................................... 9

*Valentino v. Carter–Wallace, Inc.,*
97 F.3d 1227 (9th Cir.1996) ........................................................................................................... 18

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011). ......................................................................................................................... 6

*Wang v. Chinese Daily News, Inc.,*
737 F.3d 538 (9th Cir. 2013) ........................................................................................................... 6

*Westways World Travel, Inc. v. AMR Corp.,*
265 F. App'x 472 (9th Cir. 2008) ................................................................................................... 3

*Wolin v. Jaguar Land Rover N. Am., LLC,*
617 F.3d 1168 (9th Cir. 2010) ......................................................................................................... 8

*Xavier v. Philip Morris USA, Inc.,*
787 F. Supp. 2d 1075 (N.D. Cal. 2011) ......................................................................................... 11

*Yokoyama v. Midland Nat'l Life Ins. Co.,*
594 F.3d 1087 (9th Cir.2010) ......................................................................................................... 16

*Zepeda v. Paypal, Inc.,*
C 10-1668 SBA, 2015 WL 6746913 (N.D. Cal. Nov. 5, 2015) ..................................................... 15

*Zinser v. Accufix Research Inst., Inc.,*
253 F.3d 1180 (9th Cir. 2001) ................................................................................................ 4, 17, 18

**RULES**

Fed. R. Civ. P. 23.................................................................................................*Passim*

**OTHER AUTHORITIES**

NEWBERG ON CLASS ACTIONS (5th ed.) ................................................................4, 9, 14

**STATEMENT OF THE ISSUES TO BE DECIDED**

Should a class be certified, pursuant to Rule 23(b)(3), to litigate whether the Defendants are liable for breach of contract and conversion?  The parties agree that the conversion claim rises and falls with the breach of contract claim.

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.      Background**

3

*The Underlying Case*

4

The substantive facts in this case are set out in the Plaintiffs' contemporaneously filed motion

5

for summary judgment.  In short, this case was filed because:

6

(1) According to Uber's contracts, the putative class member Drivers were (i) independent

7

contractors (Am. Compl. ¶3); (Uber's Answer ¶3); (Tackenberg Decl. Ex. 5 at 101:15-102:12); (ii)

8

allowed to set the fares for their transportation services (Tackenberg Decl. Ex. 1 at 5; Ex. 2 at 5;

9

Ex. 3 at ¶ 4.1); (iii) the owners of those fares; (Tackenberg Decl. Ex. 1 at 1, 3, 4, 9; Ex. 2 at 2, 3, 9;

10

Ex. 3 at ¶4.1)—subject only to Uber's *percentage*-based service charge on those fares; and

11

12

(2) Despite the absence of any lawful right to any portion of the transportation fare other

13

than its *percentage*-based service charge, Uber took an additional sum for itself out of those Driver-

14

owned fares on all minimum fare rides during the class period (April 18, 2014 to November 16,

15

2015)—calling the charge a "Safe Rides Fee."  (Tackenberg Decl. Ex. 5 at 114:13-21).  Tellingly,

16

Uber did not take a Safe Rides Fee out of the fares on any other rides, i.e., on any non-minimum

17

fare rides. This putative class action is a breach of written contract and conversion case against

18

Uber on behalf of the drivers who provided minimum fare rides during this time frame.

19

20

It is important to keep in mind that the economic harm suffered by each individual

21

Driver will, in all likelihood, be relatively nominal.  Indeed, when the Safe Rides Fee was

22

implemented, the fee was only $1.  However, although each Driver's economic damages will be

23

relatively small, Uber's aggregate gain from improperly taking the Safe Rides Fee out of each

24

minimum fare ride of each Driver across the country was substantial.

25

*The Form Contracts Governing Uber's Business Relation with its Drivers*

26

To obtain lead generation services through the Uber App, Drivers must first enter into a

27

Transportation Provider Services Agreement with a geographically-assigned subsidiary of Uber

28

(a Rasier defendant). (Tackenberg Decl. Ex. 1, 2, 3).  Depending on the timeframe, those agreements had different names, but they did not vary by region.  Indeed, the identical contract was used throughout the United States at any given time, and all the Rasier entities were listed within the body of the contract, assigning the specific Rasier solely by region.  (Dkt. 49 at ¶¶ 30-33; Tackenberg Decl. Ex. 1, 2, 3).

From the time the Safe Rides program launched until approximately June 21, 2014, drivers on the UberX platform performed under a form contract with Rasier, LLC; that contract—first implemented in 2013—was called the "Transportation Provider Service Agreement." (Tackenberg Decl. Ex. 1). That agreement will be referred to as the "2013 Agreement".

From approximately June 21, 2014 until approximately November 10, 2014, drivers on the UberX platform did so under another identical form contract; that contract was called the "Software Sublicense & Online Services Agreement." (Tackenberg Decl. Ex. 2). That agreement will be referred to as the "June 2014 Agreement".

From approximately November 10, 2014 until approximately December 11, 2015, drivers on the UberX platform did so under an identical form contract; that agreement was called the "Software License and Online Services Agreement." (Tackenberg Decl. Ex. 3). That agreement will be referred to as the "November 2014 Agreement".

## Argument

Given that over 9,000 drivers suffered the same alleged wrongs pursued through this litigation and signed contracts that included the same substantive, governing provisions, the Plaintiffs seek to certify a class of similarly-situated individuals pursuant to Federal Rule of Civil Procedure 23(b)(3) to litigate whether Uber breached those form agreements and committed conversion.

## I.    Class to be Certified

The moving Plaintiffs (those who opted out of arbitration) seek certification of a Rule 23(b)(3) damages class for the breach of contract and conversion claims that all the Plaintiffs have alleged against Uber in this case.  The Class is defined as:

> (A) all persons in the United States;
>
> (B) who entered the 2013 Agreement, the June 2014 Agreement, or the November 2014 Agreement, or a combination of those agreements;
>
> (C) opted-out of arbitration under the last Uber driver contract the person executed; and
>
> (D) provided at least one minimum fare ride on the UberX platform for which a Safe Rides Fee applied before November 16, 2015.

Excluded from each of the proposed classes are 1) the Defendants, 2) the Judge or Magistrate Judge to whom this case is assigned and the Judge or Magistrate Judge's immediate family, 3) persons who execute and file a timely request for exclusion from the class, 4) the legal representatives, successors, or assigns of any such excluded person; and 5) Plaintiffs' counsel and Defendants' counsel.

The defined "Class Period" runs from (i) April 18, 2014, when Uber began the Safe Rides program, until (ii) November 16, 2015.

## II.    Rule 23 Certification Standards

### The Purposes of Certification are Served by Certifying a Rule 23(b)(3) Class Here

"Rule 23 provides district courts with broad discretion to determine whether a class should be certified." *Westways World Travel, Inc. v. AMR Corp.*, 265 F. App'x 472, 475 (9th Cir. 2008);

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). In determining whether to certify a class, courts should bear in mind the "two primary purposes" of class actions: "(1) to accomplish judicial economy by avoiding multiple suits; and (2) to protect the rights of persons who might not be able to present claims on an individual basis." *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996).

A leading commentator on class actions has provided the following explanation as to why aggregation of money damages claims plays an important role in our legal system:

> [W]hen many individuals have small damage claims, aggregation is especially appropriate because absent a class suit, it is unlikely that any of the claimants will be accorded relief. One of the core purposes of the class action is to enable the pursuit of such 'negative value' cases, lest a wrong-doer escape liability by doing lots of little wrongs. Aggregation is efficient in such circumstances—although it creates more litigation than would otherwise exist—because it forces wrong-doers to internalize the cost of their wrong-doing and therefore captures the positive externalities associated with litigation.

NEWBERG ON CLASS ACTIONS § 4:47 (5th ed.) (footnotes omitted). Here, certifying a Rule 23(b)(3) class to litigate the breach of contract and conversion claims brought by the Plaintiffs will promote these advantages.   The class members' contract-based arguments are essentially identical—apart from the amount of damages—and their damages are, individually, small enough that the claims would be deemed "negative value" if litigated on a person-by-person basis.

### Legal Standards Applicable to Class Certification

Rule 23, which governs class certification, incorporates two sets of distinct requirements movants must meet before the Court may certify either class. First, the movant must meet all of the requirements under Rule 23(a). Second, each class must meet at least one of the prongs of Rule 23(b), depending on the nature of the class.

Under Rule 23(a), the Court may certify a class only where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of

the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).

After satisfying the threshold requirements of Rule 23(a), the moving party must show that the classes meet at least one of the three prongs of Rule 23(b). *Id.*; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Here, the Plaintiffs are seeking to certify a class pursuant to Federal Rule of Civil Procedure 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Under Rule 23(b)(3), a district court may certify a case for class-wide adjudication even if individual issues exist within the litigation, as long as the questions of law or fact common to the class predominate over such issues.

We first address the 23(a) requirements, then certification under Rule 23(b)(3)).

### III. Rule 23(a) Threshold Requirements

#### a. <u>Numerosity</u>

The first requirement for class certification demands that the class be "so numerous that joinder of all members is impractical." FED. R. CIV. P. 23(a)(1). Numerosity does not require a plaintiff to establish the exact number of persons in the class. *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 444 (N.D. Cal. 2001). While no specific minimum number of potential class members exists, a "proposed class of at least forty members presumptively satisfies the numerosity requirement." *Nguyen v. Radient Pharmaceuticals Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).

The proposed Class would consist of Uber Drivers from across the United States who signed pertinent agreements with Uber.  Uber has admitted that over 9,000 persons satisfy the class definition. (Tackenberg Decl. Ex. 5 at 167:18-25). The numerosity prong is satisfied.  *See Hatamian v. Advanced Micro Devices, Inc.*, 14-cv-00226-YGR, 2016 WL 1042502 (N.D. Cal. 2016) ("Plaintiffs unquestionably meet the numerosity standard. Defendants admitted the putative class contains more than 1,000 members.").

       b.  <u>Commonality</u>

Rule 23(a)(2) requires that the party seeking certification show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, a common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

The existence of common questions itself will not satisfy the commonality requirement, and instead, "[w]hat matters to class certification . . . is . . . the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. Under the commonality inquiry, "Plaintiffs need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution.  So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) (quoting *Dukes*, 131 S.Ct. at 2556).

The core issue in this litigation is whether Uber breached its contracts with the class members.[2]  That determination will turn entirely upon the interpretation of form contracts that

---

[2] The parties agree that the Plaintiffs' conversion claim rises and falls with their breach of contract claim.  (Dkt. 106 Stipulated Fact 4).

governed the parties' business relationship. The interpretation of the parties' contracts will answer the following common questions of law or fact:

    a)   What legal relationship do the Drivers have with Uber under the terms of the parties' contracts?

    b)   What consideration did the Drivers agree to pay to use Uber's mobile phone application?

    c)   What rights and obligations does Uber have as the Drivers payment collection agent?

    d)   Did the Drivers own their fares on minimum fare rides?

    e)   Did Uber, to the extent it wished to collect a Safe Rides Fee from Riders, have an obligation to charge that sum to the Riders as a sum in addition to the fares, including the minimum fares?

    f)   Can Uber unilaterally change the Drivers-owned fares?

    g)   How are other ancillary Driver-to-Rider charges handled under the contracts?

    h)   Did Uber have the contractual right to take an amount equal to the Safe Rides Fee from the Drivers' fares on minimum fare rides?

Here, each of these common questions can be determined on behalf of the entire class because each of the common questions (and the case at large) turns on the interpretation of generally applicable form contracts that each class member entered with Uber and Uber's standard (indeed, admitted) business practices. The interpretation of these generally applicable contracts will determine the ultimate question in this litigation: did Uber breach its contracts with Drivers by taking a sum equal to the Safe Rides Fee from the Drivers fares on minimum-fare rides?

Both parties agree that this case turns on contract interpretation. Contemporaneously with this motion, the Plaintiffs are moving for summary judgment on their claims on the basis that the unambiguous language of the parties' form contracts dictates that they prevail as a matter of

law.  The Defendants will similarly be filing a cross-motion for summary judgment on the same issues—arguing that a different interpretation of the same, unambiguous form contracts dooms the Plaintiffs' claims.

The fact that liability will turn on the interpretation of a generally applicable form contract heavily supports class certification.  Indeed, courts from this circuit and from around the country regularly find that Rule 23's commonality requirement is satisfied when each of the class member's claims depend on the interpretation of a generally applicable contract, and "routinely certify class actions regarding breaches of [such] form contracts." *Ellsworth v. U.S. Bank, N.A.*, C 12-02506 LB, 2014 WL 2734953, at *20 (N.D. Cal. June 13, 2014); *see also Menangerie Prods. v. Citysearch*, 2009 WL 3770668, at *9-10 (C.D. Cal. Nov. 9, 2009) (commonality and predominance requirements satisfied where "the claim arises from a standard form contract").

The commonality prong is satisfied in this case.

c.  Typicality

To satisfy typicality, Plaintiffs must establish that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* "[T]ypicality is a 'permissive' standard and 'the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *In re First American Corp. ERISA Litig.*, 258 F.R.D. 610, 618 (C.D. Cal. 2009) (quoting *Simpson v. Fireman's Fund. Ins. Co.*, 231 F.R.D. 391, 396 (N.D.

Cal. 2005)).

The Plaintiffs' claims are typical of the claims of the other members of the class.  The named Plaintiffs signed the same form contracts that the class members signed in order to use Uber's mobile application.  (Tackenberg Decl. Ex. 1, 2, 3).  Thus, Uber's rights and obligations under those form contracts are uniform across all class members (as are the rights and obligations of the class members). Uber applied the contracts uniformly, subjecting each class member to identical harm.  Where a cause of action arises from the uniform application of a form contract, the typicality prong is easily satisfied. *See*, *e.g.*, *Ellsworth*, 2014 WL 2734953, at *15 (finding that typicality was satisfied where the cause of action arose from the uniform application of identical form contracts, which necessarily subjected each class member to identical harm); *see also* NEWBERG ON CLASS ACTIONS § 3:37 (5th ed.) ("in class actions based on contractual provisions, the proposed class representative's claims are generally held to be typical of the class members' claims where all arise out of the same general contract.").

### d.   Adequacy

Finally, Rule 23(a) requires Plaintiffs to demonstrate that they will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a)(4). The Court must consider "(1) [whether] the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) [if] the representative plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Here, the named plaintiffs' interests do not, in any way, conflict with the other putative class members' interests.  There is nothing to suggest that any of the named plaintiffs have any interests antagonistic to their vigorous pursuit of the putative classes' claims.  Each of the Plaintiffs was a

Driver utilizing the Uber platform and signed one of the form contracts at issue in this litigation.[3] Each class member's claims arise under the same contractual language and legal theories, and each class member has been harmed in the same way as the named plaintiffs. The named Plaintiffs and their counsel have interests that directly align with the interests of the absent class members of the class they seek to represent.

Moreover, the named plaintiffs have been personally involved in this litigation and have expressly recognized the duties that come with being a class representative.  (Matthew Clark Declaration); (Ryan Cowden Declaration); (Dominicus Rooijackers Declaration); (Jason Rosenberg Declaration).  Beyond their declarations, the named plaintiffs have each been deposed in this action, and have each explained the basis for this litigation.  (Tackenberg Decl. Ex. 7 at 11:5-16, 8 at 17:7-19:2, 9 at 36:11-25, 10 at 27:10-28:13).

The Plaintiffs' attorneys are qualified, experienced, and fully capable of conducting the litigation. In regard to class action experience, John Crabtree, Esq., of Crabtree & Auslander, LLC, has served as lead class counsel and as appellate counsel in numerous class actions throughout his career—representing both plaintiffs and defendants.  (Decl. of John G. Crabtree). Andrew August of Browne George Ross, has been deeply involved in class action litigation in state and federal courts and has been appointed and served as class counsel in many class action cases.

---

[3] Specifically, Matthew Clark activated his driver account on March 5, 2014 and thus entered into the 2013 Agreement, as well as the June 2014 Agreement, November 2014 Agreement, and December 2015 Agreement. (Dkt. 106, Stip 2; (Am. Compl. ¶¶ 13, 30, 88); (Uber's Answer ¶¶ 13, 30, 88).  Ryan Cowden activated his driver account on August 18, 2015 and thus entered the November 2014 Agreement, as well as the December 2015 Agreement. (Dkt. 106, Stip 2; (Am. Compl. ¶¶ 15, 32, 92); (Uber's Answer ¶¶ 15, 32, 92).  Dominicus Rooijackers activated his driver account on Deecember 31, 2014 and thus entered the November 2014 Agreement, as well as the December 2015 Agreement. (Dkt. 106, Stip 2; (Am. Compl. ¶¶ 17, 32, 96); (Uber's Answer ¶¶ 17, 32, 96). Jason Rosenberg activated his driver account on October 4, 2013 and thus entered the 2013 Agreement, as well as the June 2014 Agreement, November 2014 Agreement, and December 2015 Agreement. (Dkt. 106, Stip 2; (Am. Compl. ¶¶ 18, 30, 98); (Uber's Answer ¶¶ 18, 30, 98).

(Decl. of Andrew August).   Mark Morrison also has a number of years of experience in class

action litigation.  (Decl. of Mark Morrison).

> e.   <u>Ascertainability</u>

In addition to the four requirements set forth in Rule 23(a), most courts have implied an

additional threshold requirement: that the members of the class are readily ascertainable. *Mckinnon*

*v. Dollar Thrifty Auto. Group, Inc.*, 12-CV-04457-YGR, 2016 WL 879784, at *4 (N.D. Cal. 2016); *see*

*also Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) ("[T]he party

seeking certification must demonstrate that an identifiable and ascertainable class exists."); *Herrera*

*v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666. 672 (N.D. Cal. 2011). "While Rule 23(a) does not

expressly require a class to be ascertainable, courts have read the rule to imply th[e] requirement .

. . [that] its members can be ascertained by reference to objective criteria...[and] the description of

the class is definite enough so that it is administratively feasible for the court to ascertain whether

an individual is a member." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 299

(N.D.Cal. 2010) (internal citations and quotations omitted), abrogated on other grounds by *In re*

*ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012).

"To establish ascertainability for purposes of class certification, plaintiffs must demonstrate

that members of the proposed class are readily identifiable by objective criteria and that it is

administratively feasible to determine whether a particular person is a member of the class."

*Mckinnon*, 2016 WL 879784, at *8.  "[A] class definition is sufficient if the description of the class is

'definite enough so that it is administratively feasible for the court to ascertain whether an

individual is a member.' " *Philliben v. Uber Techs., Inc.*, 14-CV-05615-JST, 2016 WL 4537912, at

*12 (N.D. Cal. 2016).  "An identifiable class exists if its members can be ascertained by reference

to objective criteria, but not if membership is contingent on a prospective member's state of

mind." *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 528–29 (N.D. Cal. 2012).

Given that Uber's business model is premised on each Driver using Uber's mobile app to connect with individual Riders, that Uber collects payment from the Riders on each Driver's behalf and sends payment to each Driver once it has taken its service fee out of the Drivers' fares, and that Uber's contracts specifically allow for Uber to provide Uber with an email address and phone number, it necessarily follows that Uber maintains business records regarding each Driver's business relationship with Uber.



[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

In fact, it appears that Uber has already determined—[redacted]—precisely how many Drivers would be included in the class if that class was certified as proposed. When asked how many Drivers were in the class, Mr. Colman—although not able to remember the precise number offhand—was able to affirmatively state that over 9,000 Drivers that satisfy the class definition. (Tackenberg Decl. Ex. 5 at 167:18-25).

[redacted]s [redacted]

1 ██████████████████████████████████████████████s (i███████ding

2 ██████████████████████████████████

### IV.   Rule 23(b)(3) Certification

Rule 23(b)(3)[4] requires plaintiffs to establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).  We will address each prong in turn.

####   a.   Predominance

The "Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  "Though common issues need not be 'dispositive of the litigation,' they must 'present a significant aspect of the case [that] can be resolved for all members of the class in a single adjudication' so as to justify 'handling the dispute on a representative rather than an individual basis.'" *Delagarza v. Tesoro Ref. & Mktg. Co.*, C-09-5803 EMC, 2011 WL 4017967, at *10 (N.D. Cal. 2011) (internal citation omitted).

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (quoting Fed. R. Civ. P. 23(b)(3)). Here, the Plaintiffs bring a straightforward breach of contract action, which requires the Plaintiffs to prove four elements: "'(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach.'" *Mazonas v. Nationstar*

---

[4] The class can, of course, seek injunctive relief through Rule 23(B)(3). *See* NEWBERG ON CLASS ACTIONS § 4:38 (5th ed.) (noting that where injunctive relief and monetary relief is sought under Rule 23(b)(2), many courts "shift the entire case to (b)(3) certification because of the presence of money damages").

1
2
*Mortgage LLC*, 16-CV-00660-RS, 2016 WL 2344196, at *7 (N.D. Cal. May 4, 2016) (quoting *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008)).[5]

3
4
5
6
7
8
        As explained above, interpretation of form contracts is likely to drive the outcome of Plaintiffs' breach of contract claim. It is undisputed that the Drivers entered contracts with Uber's wholly-owned Rasier entities in order to use Uber Tech's mobile phone application.   Those Driver contracts were form agreements, each of which included the same governing provisions. Under the terms of those form agreements, Uber treated the class members uniformly.

9
10
11
12
13
14
        Determining whether Uber's actions amount to a breach of contract will turn on an interpretation of the form contracts that are generally applicable to the class.   Because the resolution of the named Plaintiffs' breach of contract claim will turn on the interpretation of the same form contracts that are generally applicable to the class, the resolution of the named Plaintiffs' claims will necessarily resolve those issues on a class-wide basis.

15
16
17
18
19
20
21
22
23
24
25
26
        "Cases arising out of questions of interpretation of form contracts are especially appropriate for class action resolution." *Rodriguez v. Farmers Ins. Co. of Arizona*, CV0906786JGBAJWX, 2013 WL 12109896, at *3 (C.D. Cal. Aug. 4, 2013).   Indeed, this proposition has become commonplace in class certification case law from this circuit.   *See, e.g.*, *Zepeda v. Paypal, Inc.*, C 10-1668 SBA, 2015 WL 6746913, at *8 (N.D. Cal. Nov. 5, 2015) (finding that common issues of law and fact predominated where defendant breached form contracts); *Ellsworth*, 2014 WL 2734953, at *20 ("courts routinely certify class actions regarding breaches of form contracts"); *Schulken v. Washington Mutual Bank*, 2012 WL 28099, at *13 (N.D Cal. Jan. 5, 2012) (certifying class alleging breach of form contract); *In re Med. Capital Secs. Litig.*, 2011 WL 5067208, at *3 (C.D. Cal. July 26, 2011) ("Courts routinely certify class actions involving breaches of form contracts."); *Ewert v. eBay, Inc.*, 2010 WL 4269259, *7 (N.D. Cal. Oct. 25, 2010) (same);

27
28
[5] The parties agree that the Plaintiffs second cause of action—conversion—will rise and fall with the Plaintiffs' breach of contract action.  (Dkt. 106 Stipulated Fact 4).

*Lymburner v. U.S. Fin. Funds, Inc.*, 263 F.R.D. 534, 539-41 (N.D. Cal. 2010) (commonality and predominance requirements satisfied where plaintiff's claim was "subject to proof through one set of loan documents"); *Menangerie Prods*, 2009 WL 3770668, at *9-10 (commonality and predominance requirements satisfied where "the claim arises from a standard form contract").

That proposition is equally commonplace in case law from outside this circuit. *See, e.g.,* *Sacred Heart Health Systems, Inc. v. Humana Military Healthcare*, 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment"); *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 42 (1st Cir. 2003) ("Overall, we find that common issues of law and fact predominate here. The case turns on interpretation of the form contract, executed by all class members and defendant."); *Keele v. Wexler*, 149 F.3d 589, 594-95 (7th Cir. 1998) ("claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action"); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008) ("An overwhelming number of courts have held that claims arising out of form contracts are particularly appropriate for class action treatment."); *Mortimore v. F.D.I.C.*, 197 F.R.D. 432, 438 (W.D. Wash. 2000) ("Since this case involves the use of form contracts, it is particularly appropriate to use the class action procedure."); *Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 121 F.R.D. 664, 669 (N.D. Ill. 1988) ("Since plaintiffs' claims arise from allegations of common practice and rights derived from form contracts, the case appears to present the classic case for treatment as a class action.") (internal quotations omitted).

The only individualized issues that may present themselves in this litigation involve calculating the *amount* of damages to which each class member is entitled after liability is established.  "In this circuit, however, damage calculations alone cannot defeat certification." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir.2010); *see also Blackie v. Barrack*,

524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment."). Indeed, class certification is appropriate where individualized damages can "feasibly and efficiently be calculated once the common liability questions are adjudicated." *Leyva*, 716 F.3d at 514.

b. <u>Superiority</u>

The following four factors are relevant to determining if class treatment is superior to individual suits: "(1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action." FED. R. CIV. P. 23(b)(3)(A)-(D).   "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Inst., Inc.*,

253 F.3d 1180, 1190 (9th Cir. 2001). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1235 (9th Cir.1996). Each of the above factors favors certification.

*First*, the putative class members do not have a strong interest in bringing their own individual cases for breach of contract and conversion.  If a driver were to bring an individual case, that driver would, typically, be litigating a claim of less than $1,000 with no right to prevailing-party attorney's fees. An individual plaintiff would have very little interest in undertaking such an endeavor because the potential recovery for each class member is too small. "Cases, such as this, 'where litigation costs dwarf potential recovery' are paradigmatic examples of those well-suited for classwide prosecution." *Mullins v. Premier Nutrition Corp.*, 13-CV-01271-RS, 2016 WL 1535057, at *8 (N.D. Cal. 2016) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998)).

*Second*, Plaintiffs are not aware of any other pending cases challenging Uber's decision to take a sum equal to the Safe Rides Fee out of its Drivers' fares on minimum fare rides on breach of contract grounds (or any other grounds for that matter). There is thus no "threat of multiplicity" nor "risk of inconsistent adjudications." *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 543 (N.D. Cal. 2015) (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001)).

*Third*, concentrating the litigation in this forum makes sense given that the contracts at issue in this case contain a venue provision requiring that any litigation arising out of the contracts be filed in San Francisco, California, and given that Uber is litigating several other major cases in this forum.

*Fourth*, because the Defendants engaged in uniform conduct toward each class member— and Uber keeps extensive business records for the proposed class members—there is no reason to

1
2
3
4
5
6

think that the case will present any management difficulties.   As explained above in the predominance analysis, this litigation turns almost entirely on the resolution of issues applicable to the class, and thus no management issues exist. *Ewert*, 2010 WL 4269259, at *12 ("In this case, however, a class action would be manageable since the focus of the litigation would be on common issues.")

7

## CONCLUSION

8
9
10

The Court should enter an order granting the plaintiffs' motion for class certification, appointing the named Plaintiffs as class representatives for the issue class, and appointing undersigned counsel as counsel for the class.

11
12

Dated: August 29, 2017                          Respectfully submitted,

13

/s/ John G. Crabtree

John G. Crabtree

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<table>
<tr><td>

John G. Crabtree
Florida Bar No. 886270
Charles M. Auslander
Florida Bar No. 349747
George R. Baise Jr.
Florida Bar No. 0111805
Brian Tackenberg
Florida Bar No. 0107224
CRABTREE & AUSLANDER, LLC
240 Crandon Boulevard, Suite 101
Key Biscayne, Florida 33149
Telephone (305) 361-3770
Fax (305) 437-8118
jcrabtree@crabtreelaw.com
causlander@crabtreelaw.com
gbaise@crabtreelaw.com
btackenberg@crabtreelaw.com
floridaservice@crabtreelaw.com

</td><td>

Andrew A. August
California Bar No.112851
BROWNE GEORGE ROSS, LLP
101 California Street, Suite 1225
San Francisco, California 94111
Telephone (415) 391-7100
Fax (415) 391-7198
aaugust@bgrfirm.com

Mark A. Morrison
California Bar No. 152561
MORRISON AND ASSOCIATES
113 Cherry Street, Unit 34835
Seattle, Washington 98104
Telephone (206) 317-3315
Fax (206) 397-0875
Mark@mpaclassaction.com

</td></tr>
</table>

*Counsel for Plaintiffs Matthew Clark, Ryan Cowden, Dominicus Rooijackers,*
*and Jason Rosenberg, individually and on behalf of all others similarly*
*situated*

## PROOF OF SERVICE

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on August 29, 2017 and served by the same means on all counsel of record.

/s/ John G. Crabtree

John G. Crabtree