# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHUCK CONGDON, ET AL.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**UBER TECHNOLOGIES, INC., ET AL.,**<br><br>Defendants. | CASE NO. 16-cv-02499-YGR<br><br>**ORDER DENYING PLAINTIFFS' MOTION REGARDING PUNITIVE DAMAGES**[1]<br><br>Re: Dkt. No. 143 |

Now before the Court is plaintiffs' Motion Regarding Punitive Damages.[2] (Dkt. No. 143 ("Motion").) Having carefully considered the papers submitted, the pleadings in this action, and the admissible evidence, the Court **DENIES** plaintiffs' motion.[3]

## I. RELEVANT BACKGROUND

The facts at issue in this case are well known to the parties and the Court. The Court adopts in full the background section of its order granting plaintiffs' motion for summary judgment, denying Uber's cross-motion, and granting plaintiffs' motion for class certification. (*See* Order re: Cross-Motions for Summary Judgment; Granting Plaintiffs' Motion for Class Certification ("MSJ & Class Cert. Order") at 2–6, Dkt. No. 133.)[4] The Court summarizes the

---

[1] The prior version of this Order has been sealed as it was posted inadvertently.

[2] Plaintiffs Matthew Clark, Ryan Cowden, Dominicus Rooijackers, and Jason Rosenberg bring the instant motion on behalf of themselves and the certified class of Uber drivers they represent.

[3] In connection with their briefing on the instant motion, the parties filed administrative motions to seal certain documents. (Dkt. Nos. 144, 148.) The Court addresses both motions to seal in a separate order.

[4] As in the Court's MSJ & Class Cert. Order, "Uber" is used herein to refer to defendants Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC, Rasier-DC, LLC, and Rasier-PA, LLC, collectively.

procedural background pertinent to the instant motion below.

On October 11, 2016, plaintiffs filed the operative complaint in this action, alleging claims for breach of contract and conversion, arising out of Uber's implementation of the so-called "Safe Rides Fee' as it relates to so-called "minimum fare rides" specifically. (*See generally* Amended Complaint ("FAC"), Dkt. No. 49.) In that complaint, plaintiffs included a request for punitive damages in their prayer for relief. (*See id*. ¶ 180.)

At the Case Management Conference held on April 10, 2017, the Court established June 13, 2017 as the deadline for fact discovery and set the briefing schedule for the parties' cross-motions for summary judgment and plaintiffs' class certification motion. (*See* Dkt. No. 88.) The parties subsequently filed said motions. (*See* Dkt. Nos. 108, 109, 114.)

On March 8, 2018, the Court issued its order granting plaintiffs' motion for summary judgment as to their claims for breach of contract and conversion, denying Uber's cross-motion as to the same, and granting plaintiffs' motion for class certification. (*See* MSJ & Class Cert. Order.)

On March 26, 2018, the parties filed their fourth case management conference statement in this case. (Dkt. No. 139.) The parties agreed therein as to the appropriate measure of compensatory damages, namely "the total amount of 'Safe Rides Fees' sums taken out of class members' fares on minimum fare rides, minus Uber's then-prevailing percentage service fee charge to drivers on those fares." (*Id*. at 4.) The parties also described their disagreement over plaintiffs' ability to seek punitive damages (*see generally id*.), and each proposed a schedule for the completion of discovery and for briefing anticipated motions (*id*. at 4–5).

The following day, having considered the parties' statements regarding the scope of the case, the Court set a fact and expert discovery cutoff of July 21, 2018. (*See* Dkt. No. 140.) In so doing, the Court explicitly excluded "discovery pertaining to punitive damages" and indicated that this limitation was "subject to change to the extent punitive damages are found applicable at a later juncture." (*Id*. at 1.)

On April 6, 2018, plaintiffs filed the instant motion, in which they seek "a determination regarding punitive damages issues—specifically, the right to punitive damages discovery and

whether the proceedings should be bifurcated." (Motion at p. ii.)[5]

## II. DISCUSSION

California Civil Code section 3294(a) states that "[i]n an action for the breach of an obligation *not arising from contract*, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover [punitive] damages . . . ."[6] (emphasis supplied). Thus, by its own terms, section 3294 applies neither to plaintiffs' claim for breach of contract *nor* their claim for conversion, which plaintiffs themselves have until now treated as "arising from contract."

Plaintiffs' own representations to the Court throughout the litigation are telling. As stated in plaintiffs' class certification motion, "[t]he core issue in this case is *whether Uber breached its contracts with the class members*." (Plaintiffs' Notice of Motion and Motion to Certify Damages Class ("Class. Cert. Motion") at 6, Dkt. No. 109 (emphasis supplied).) Plaintiffs' summary judgment motion similarly provides: "The premise of this case is that Uber was not *contractually entitled* to take the money that it took out of the Driver-owned 'fares' on minimum-fare rides. By doing so, Uber breached its contract with the Drivers *and committed conversion*." (Plaintiffs' Notice of Motion and Motion for Summary Judgment ("Plaintiffs' MSJ") at 2, Dkt. No. 109 (emphases supplied).) Indeed, while the section in plaintiffs' motion concerning summary judgment as to their breach of contract claim spans nine pages, the section regarding summary judgment as to plaintiffs' conversion claim consists solely of the following paragraph:

> "[A] plaintiff must plead three elements to state a claim for conversion: (1) ownership or right to possession of real property; (2) a defendant's wrongful interference with the claimant's possession; and (3) damage to the claimant." *Fields v. Wise Media, LLC*, C 12-05160 WHA, 2013 WL 3187414, at *7 (N.D. Cal. June 21, 2013). *In light of the similarity between the Plaintiffs' conversion and*

---

[5] Because the parties' briefs indicate that "now neither party seeks bifurcation," the Court does not address that issue herein. (Plaintiffs' Reply In Support of Motion Regarding Punitive Damages ("Reply") at 12, Dkt. No. 151; *see also* Defendants' Opposition to Plaintiffs' Motion Regarding Punitive Damages ("Opposition") at 12, Dkt. No. 149.)

[6] *See also Berkla v. Corel Corp.*, 302 F.3d 909, 917 (9th Cir. 2002) ("[P]unitive damages, which are designed to punish and deter wrongful conduct, are not available in breach of contract actions.") (citing section 3294(a)).

3

*breach of contract claims, the parties have stipulated that Uber's liability for the conversion claim should rise and fall with the breach of contract claim.* (Dkt. 106 Stipulated Fact 4).

(Motion at 18 (emphasis supplied).) Based on this stipulation,[7] and in light of the Court's granting of plaintiffs' motion for summary judgment as to their breach of contract claim, the Court granted plaintiffs' motion for summary judgment as to their conversion claim. (*See* MSJ & Class Cert. Order at 13.)

Against this backdrop of plaintiffs' numerous statements conflating their breach of contract and conversion claims, their reliance on *Erlich v. Menezes*, 21 Cal. 4th 543 (1999) to now argue that they are entitled to punitive damages on their conversion claim is misplaced. Pursuant to *Erlich*, the general rule is that tort recovery is precluded for non-insurance breach of contract cases unless the breach also "violates a duty independent of the contract arising from principles of tort law." *Erlich*, 21 Cal. 4th at 551. The California Supreme Court explained:

> Generally, outside the insurance context, a tortious breach of contract . . . may be found when (1) the breach is accompanied by a traditional common law tort, such as fraud or conversion; (2) the means used to breach the contract are tortious, involving deceit or undue coercion or; (3) one party intentionally breaches the contract intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages. . . . Focusing on intentional conduct gives substance to the proposition that a breach of contract is tortious only when some independent duty arising from law is violated. . . . If every negligent breach of contract gives rise to tort damages the limitation would be meaningless, as would the statutory distinction between tort and contract remedies.

*Id*. at 553–54 (first alteration in original) (internal quotation marks and citations omitted). The Court additionally noted that a "reason[] for denying tort recovery in contract breach cases" is "the potential for converting every contract breach into a tort, with accompanying punitive damage recovery[.]" *Id*. at 553. In light of these pronouncements by the California Supreme Court, this Court finds that plaintiffs in the instant action are not entitled to an award of punitive damages for

---

[7] Plaintiffs also cited this stipulation in their class certification motion, noting "[t]he parties['] agree[ment] that the Plaintiffs' conversion claim rises and falls with their breach of contract claim." (Class Cert. Motion at 6 n.2; *see also id*. at 15 n.5 ("The parties agree that Plaintiffs second cause of action—conversion—will rise and fall with the Plaintiffs' breach of contract action.").)

4

a conversion claim *entirely dependent upon* their breach of contract claim. To hold otherwise would effectively "convert[] [a] contract breach into a tort," *id*. at 553, and thus render "meaningless . . . the statutory distinction between tort and contract remedies," *id*. at 554.[8]

Plaintiffs' argument that Uber is attempting to "disavow its stipulation at this juncture" does not persuade. First, it mischaracterizes the nature of the stipulation reached by the parties. The parties did not stipulate specifically "to the ownership element [of conversion]." (Motion at 8; *see also id*. at 7.) Rather, they stipulated in general terms that "[p]laintiffs' claim for conversion will rise and fall with plaintiffs' claim for breach of contract." (Dkt. No. 106 Stipulated Fact 4.) Second, plaintiffs misapprehend the arguments in Uber's opposition brief. Contrary to plaintiffs' bald assertion, Uber does not at this juncture "contend that the class members did not own the fares that they improperly kept." (Reply at 8.) Rather, the essence of Uber's argument pertaining to plaintiffs' entitlement to punitive damages is that since plaintiffs' claims for breach of contract and conversion "are identical, [p]laintiffs may not recover punitive damages for their conversion claim." (Opposition at 7.) Crucially, plaintiffs have not rebutted Uber's claim that they "offered no separate facts or briefing on their conversion claim." (*Id*.) This is unsurprising given plaintiffs' numerous representations, outlined above, that their breach of contract and conversion

---

[8] Plaintiffs' reliance on *Miller v. National American Life Insurance Company*, 54 Cal. App. 3d 331 (1974) is also misplaced as *Miller* involved causes of action based on contract and *fraudulent inducement*. It is well settled that while "[p]unitive damages are not recoverable in an action for breach of contract no matter how willful, malicious or fraudulent the breach . . . [,] [t]hey may, however be awarded where a defendant fraudulently induces the plaintiff to enter into a contract." *Walker v. Signal Cos.*, 84 Cal. App. 3d 982, 996 (1978); *see also, e.g., Mahon v. Berg*, 267 Ca. App. 2d 588, 589–90 (1968) (affirming award of punitive damages where recovery was based on fraudulent inducement into an unenforceable contract). Indeed, where an action includes causes of action based on contract and fraudulent inducement, the court may properly instruct the jury that punitive damages could be awarded only for fraud and that only compensatory damages could be awarded for breach of contract. *See Kuchta v. Allied Builders Corp.*, 21 Cal. App. 3d 541, 549 (1971).
Putting aside the propriety of citing unpublished state court decisions, plaintiffs' reliance on *Medison America, Inc. v. Badell*, No. G033243, 2006 WL 148230 (Cal. Ct. App. Jan. 30, 3006) is also misguided. As plaintiffs note, the court in *Medison* stated that the plaintiff was "not precluded from recovering punitive damages just because [defendant's] act of conversion also constituted a breach of contract." *Id*. at *3; *see* Reply at 6. However, the court there *also* noted that "some of the equipment converted by [defendant] was *not subject to the written sales representative agreements*." *Id*. n.4 (emphasis supplied). Unlike in *Medison*, there are no independent facts in the record unique to plaintiffs' conversion claim.

claims are one and the same. (*See supra* pp. 3–4.)

In sum, plaintiffs are precluded as a matter of law from seeking punitive damages in the instant case. Accordingly, plaintiffs are not entitled to discovery pertaining to the same, including discovery pertaining to Uber's financial condition.

## III. CONCLUSION

Because the Court finds that plaintiffs cannot seek punitive damages, their motion is **DENIED**. Accordingly, the Court need not reach the issues raised in the parties' briefs of whether (i) plaintiffs' request to seek discovery pertaining to punitive damages is untimely, or (ii) plaintiffs must make a threshold showing of oppression, fraud, or malice before pursuing punitive damages.[9]

This Order terminates Docket Number 143.

**IT IS SO ORDERED.**

Dated: June 13, 2018

*[signature]*

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[9] However, with respect to the former, the Court feels compelled to address one point given plaintiffs' disingenuous characterization of statements made by Uber's counsel at oral argument on October 31, 2017. Plaintiffs are correct that Uber's counsel made the following statement to the Court: "You asked the damages question. We haven't done that in discovery yet." (Dkt. No. 128 at 43:16–17; *see also* Reply at 4.) *However*, plaintiffs omitted the portion of counsel's statement indicating that the outstanding discovery he contemplated was limited to *compensatory* damages: "We have done an estimation of the 80 percent of the minimum fare rides that 9600 opt-out class members took would come to about $1.4 million." (*Id*. at 43:16–20.) Indeed, plaintiffs' counsel appeared to contemplate the same, explaining to the Court: "It's a contract construction case. . . . As far as the damages go, . . . we have not done discovery on this, but I think Uber has indicated that they have a number already . . . ." (*Id*. at 35:11–14.) Moreover, in response to the Court's question whether plaintiffs' counsel believed "defendants are entitled to 20 percent of the minimum fare," *id*. at 21–23, plaintiffs' counsel responded: "[I]t's not so much that they are entitled as is a question of how to calculate damages. But I think the short answer is that in *any reasonable damages calculation*, you'd have to reduce it by 20 percent because that is what we would have lost had they applied the contract properly." (*Id*. at 43:24–44:4 (emphasis added).) At no point during oral argument were punitive damages mentioned by *either* party.