**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CHUCK CONGDON, ET AL.,**<br>Plaintiffs,<br>vs.<br>**UBER TECHNOLOGIES, INC., ET AL.,**<br>Defendants. | CASE NO. 16-cv-02499-YGR<br><br>**ORDER GRANTING IN PART MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>Re: Dkt. Nos. 175, 185 |

Plaintiffs Matthew Clark, Ryan Cowden, Dominicus Rooijackers, and Jason Rosenberg filed the instant class action against defendants Uber Technologies, Inc. and its wholly-owned subsidiaries Raiser, LLC; Raiser-CA, LLC; Raiser-PA, LLC; and Raiser-DC, LLC (collectively, "Uber") alleging that Uber was taking its "Safe Rides Fee" out of drivers' fares. (Dkt. No. 1 ("Complaint").) On November 19, 2018, following an order granting plaintiffs' motions for class certification and summary judgment, plaintiffs filed a motion for attorneys' fees, costs, and class representatives' service awards. (Dkt. No. 175 ("Motion").) The parties reached an agreement on compensatory damages but did not agree on attorneys' fees. (*Id*. at 2.) Hence, the instant motion.

Having considered the motion, the opposition thereto, and the record in this action, and for the reasons stated herein, the motion is **GRANTED IN PART**.

**I.    LITIGATION HISTORY**

Plaintiffs filed their initial complaint in this action on May 9, 2016, alleging that Uber was taking its "Safe Rides Fee" out of drivers' fares on minimum fare rides, notwithstanding written assurances that it would not do so. (Complaint, ¶ 1.) Plaintiffs brought a claim for breach of contract on behalf of three proposed classes of similarly situated drivers. (*Id*. ¶¶ 86-92, 117-128.) In addition to seeking damages, plaintiffs sought injunctive and declaratory relief. (*Id*. ¶¶ 129-142.)

Shortly after filing this action, class counsel filed objections to a proposed class action settlement in *O'Connor v. Uber Technologies, Inc.*, Case No. 3:13- 03826-EMC, and *Yucesoy v.*

*Uber Technologies, Inc.*, Case No. 3:15-00262-EMC, which could have released plaintiffs' claims in this action. Judge Chen, presiding over *O'Connor* and *Yucesoy*, denied those plaintiffs' motion for preliminary approval, thereby preventing release of plaintiffs' claims in this case.

On October 11, 2016, plaintiffs filed an amended complaint, adding additional plaintiffs and a cause of action for conversion. (Dkt. No. 49 ("FAC"), ¶¶ 150-165.) Thereafter, Uber moved to compel plaintiffs who did not opt out of Uber's arbitration provisions to arbitrate their claims and to stay litigation pending arbitration. (Dkt. No. 50.) Plaintiffs subsequently filed a motion to certify an issue class to litigate whether enforcement of the arbitration provisions would frustrate the drivers' right to relief for claims that were otherwise subject to arbitration. (Dkt. No. 51.) On December 8, 2016, after full briefing on both motions, the Court compelled the non-opt-out plaintiffs to arbitration but denied Uber's motion to stay the case as to the opt-out plaintiffs. (Dkt. No. 65, at 1.) The Court also denied plaintiff's class certification motion as moot. (*Id*. at 6-7.)

After limited discovery, plaintiffs filed a class certification motion and the parties filed cross-motions for summary judgment. (Dkt. Nos. 108-109, 114.) The Court granted plaintiffs' motions, denied Uber's cross-motion, and also denied plaintiffs' request for punitive damages. (Dkt. Nos. 133, 154.) Thereafter, the parties engaged in discovery to reach an agreement on compensatory damages and class notice. (Motion, at 6.)

**II. DISCUSSION**

    **A. Attorneys' Fees**

Because plaintiffs' claims in this action arise under California law, California law governs recovery of attorneys' fees. *In re Sony PS3 "Other OS" Litig.*, No. 10-CV-01811-YGR, 2018 WL 2763337, at *1 (N.D. Cal. June 8, 2018) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)).

Under California Code of Civil Procedure ("CCP") § 1021.5, a court may award attorneys' fees to a successful party in any action "which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit . . . has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out

of the recovery, if any." Plaintiffs contend, and Uber does not dispute, that they are "successful parties" and meet the other requirements for recovery of attorneys' fees under section 1021.5. Thus, the Court considers, in light of plaintiffs' status as "successful parties," the amount of appropriate attorneys' fees. The party seeking fees has the burden of proving "that the hours requested were reasonable" and providing "a sufficient and proper basis for making that determination." *Rey v. Madera Unified Sch. Dist.*, 203 Cal. App. 4th 1223, 1244 (2012); *see also Concepcion v. Amscan Holdings, Inc.*, 223 Cal. App. 4th 1309, 1325 (2014) ("[C]lass counsel had the burden of proving the reasonable number of hours they devoted to the litigation . . . .").

### 1. *Lodestar Method*

The Court applies California's lodestar method to calculate the appropriate attorneys' fees to be awarded to class counsel under section 1021.5. *See Meister v. Regents of Univ. of California*, 67 Cal. App. 4th 437, 448-49 (1998) ("the California Supreme Court intended its lodestar method to apply to a statutory attorney's fee award unless the statutory authorization for the award provided for another method of calculation"); *Lealao v. Beneficial California, Inc.,* 82 Cal.App.4th 19, 26 (2000) ("the primary method for establishing the amount of 'reasonable' attorney fees [in fee-shifting cases] is the lodestar method").[1] Under the lodestar method, the Court "begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (citation omitted).

Once the Court determines the lodestar amount, it may, in "rare" and "exceptional" cases, adjust the lodestar upward or downward "using a 'multiplier' based on factors not subsumed in the initial calculation." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (citing *Blum v. Stenson*, 465 U.S. 886, 897, 898-901 (1984)); *see also Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (2001) (holding that court is not required to apply a multiplier to basic lodestar figure

---

[1] In their motion, plaintiffs purport to seek attorneys' fees as successful parties under section 1021.5, and in the alternative, under a "common fund" theory. (Motion, at 6, 22-23.) Plaintiffs appear to abandon the "common fund" theory in their reply. (Reply, at 15.) The Court therefore analyzes plaintiffs' request for under section 1021.5 using the lodestar method. However, even in common fund cases, "the district court 'has discretion to apply either the lodestar method or the percentage-of-the-fund method in calculating a fee award.'" *Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016) (quoting *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002)).

3

but retains discretion to do so). In determining whether to apply a multiplier, a court should consider, among other factors, "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). Application of a multiplier must be supported by "specific evidence on the record and detailed findings by" the Court. *Van Gerwen*, 214 F.3d at 1045 (internal quotation marks omitted). The party seeking a fee enhancement bears the burden of proof. *Ketchum*, 24 Cal. 4th at 1138.

### 2. *Lodestar Amount*

The first step of the lodestar method requires the Court to determine the amount of the lodestar by multiplying the number of hours counsel reasonably expended on this litigation by a reasonable hourly rate. *Hanlon*, 150 F.3d at 1029. Plaintiffs assert a lodestar of $1,340,067, which they note exceeds the full-recovery amount won on behalf of the class and the amount counsel would recover based on a percentage of common fund theory. (Motion, at 13; Dkt. No. 178 ("Morrison Decl."), ¶ 29.)[2] Uber argues that the lodestar is unreasonable in light of various benchmarks, objects to various specific line items, and challenges counsel's hourly rate. The Court considers each argument in turn.

With respect to the benchmarking category, Uber makes three arguments. First, Uber argues that the lodestar fails a contingency fee cross-check. (Dkt. No. 184 ("Opp."), at 3.) According to Uber, class counsel's request for $1.34 million is 72% of the $1.85 million recovery,[3] which exceeds the 25% benchmark typically used in class action settlements and renders the lodestar unreasonable. (*Id.*) Plaintiff counters that under California law, disproportionality between attorneys' fees and class recovery in fee-shifting cases is common and is not grounds to reduce the lodestar. (Dkt. No. 189 ("Reply"), at 2-3.)

---

[2] The Court notes that class counsel reduced the total amount of time billed to this matter by 31% where they could not justify seeking compensation for the work performed. (Morrison Decl., ¶¶ 25-28; *see also* August Decl., ¶¶ 32-33; Crabtree Decl., ¶¶ 37-40.)

[3] Plaintiffs obtained a judgment of compensatory damages of $1,406,671. (Opp., at 1.) With interest, the judgment totals $1,856,377. (*Id.*)

4

The Ninth Circuit encourages district courts "to guard against an unreasonable result" by cross-checking attorneys' fees calculations against a second method. *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 944 (9th Cir. 2011); *see also In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997) ("It is reasonable for the district court to compare the lodestar fee, or sum of lodestar fees, to the 25% benchmark, as one measure of the reasonableness of the attorneys' hours and rates."). However, the fee award need not "be equally justifiable under both the lodestar and the percentage methods." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1190 (9th Cir. 2013); *see also Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1171 (C.D. Cal. 2010) ("[W]hile the Court has discretion to perform a 'cross-check' against the total class recovery, it is not required.") (citing *Consumer Priv. Cases*, 175 Cal. App. 4th 545, 557 (2009)).

Notably, a cross-check is typically used "[i]n settled cases involving constructive common funds," *In re HP*, 716 F.3d at 1190, in order to prevent a windful to class counsel. *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 1000 (N.D. Cal. 2017) (quoting *Laffitte v. Robert Half Int'l Inc.*, 1 Cal.5th, 480, 490 (2016)). In fee-shifting cases like this one, a percentage cross-check is of less usefulness. *See* 5 Newberg on Class Actions § 15:52 (5th edition) ("[W]hen awarding fees in *fee-shifting* cases, courts do not—indeed typically cannot—utilize a percentage cross-check because of the absence of a significant enough recovery fund to make the cross-check feasible.") (emphasis in original); *see also Jefferson v. Chase Home Fin.*, C 06-6510 TEH, 2009 WL 2051424, at *3 (N.D. Cal. July 10, 2009) ("California courts have approved attorneys' fees where there is significant disparity between the Plaintiffs' recovery and the lodestar fee award."); *In re Galindo*, ADV 10-90473, 2013 WL 3389556, at *7 (B.A.P. 9th Cir. July 8, 2013) (affirming award of fees and costs approximately 47 times actual damages in a CLRA case, and stating that "when public interests are at stake it is appropriate to award substantial attorney fees and costs notwithstanding relatively small actual damages"). Further, California's fee-shifting statute, pursuant to which plaintiffs seek attorneys' fees, is intended to "encourage litigation in cases that are not likely candidates to produce high-dollar judgments . . . because only modest amounts of money are at stake." *Parkinson*, 796 F. Supp. 2d at 1171 (quoting James R. Maxeiner, *Cost and Fee Allocation*

*in Civil Procedure,* American 58 Am. J. Comp. L. 195, 201 (2010)).

Here, the Court's December 8, 2016 order dramatically reduced the size of the putative class, which in turn reduced the size of compensatory damages. (Dkt. No. 65.) Had the class size been greater, so too would be the damages award. What would not have changed measurably is the amount of work necessary to achieve the same result. Thus, while a factor, the lodestar amount should not be arbitrarily reduced where class counsel continued to litigate this case to judgment on behalf of the remaining class members. *See Parkinson*, 796 F. Supp. 2d at 1171-73 (declining to use percentage cross-check and awarding fees of $3.7 million on class recovery of approximately $1.4 million).

Second, Uber compares the fee to that of defense counsel and contends that "[t]he amount of time spent by defendants' attorneys on a particular matter may have significant bearing on the question [of] whether plaintiff's attorney expended a reasonable time on the same matter." (Opp., at 3, citing *In re Tobacco Cases I*, 216 Cal. App. 4th 570, 585 (2013).) In support of its argument that the lodestar is too high, Uber puts forth evidence suggesting that class counsel's fees were almost twice as high as Uber's counsel's fees. (Dkt. No. 184-1 ("Stern Decl."), ¶ 13, Ex. F.) From this, Uber concludes that "something is amiss." (Opp., at 4.)

The Court disagrees. As plaintiffs correctly point out, Uber has not put forth evidence regarding how much *time* its counsel devoted to this matter from which the Court could cross-check the amount of time expended by plaintiff's counsel. Moreover, *In re Tobacco*, 216 Cal. App. 4th at 584-85, noted that courts compare the amount of time spent by each party's counsel at particular stages of a case, such as the pretrial motion stage, where "[e]ach party must prepare to question the same witnesses, must review the same documents and other evidence, and must anticipate a presentation by the opposition of a complexity related to the facts in issue." The Court does not interpret *In re Tobacco* as requiring that it must compare the time spent by each party's counsel through the full life of the case, particularly where class counsel engaged in significant pre-filing work and has the burden of proof as opposed to the more defensive posture taken by defendant. (*See* Dkt. No. 176 ("Crabtree Decl."), ¶¶ 3-6.) Therefore, defense counsel's fees do not, in themselves, demonstrate that the lodestar amount is unreasonable.

6

Third, Uber compares the fee award in this case to *Dulberg v. Uber Technologies, Inc.*, No. 17-00850 WHA (N.D. Cal. Oct. 9, 2018), which involved the "[s]ame defendant, same contract, similar claims, and similar effort by class counsel." (Opp., at 4.) However, the *Dulberg* court recently rejected the proposed class settlement of $345,622 in that case. *Dulberg*, No. 17-008500 WHA, Dkt. No. 153. Any assessment of "likely" attorneys' fees based on the proposed settlement amount would therefore be inappropriate. Further, the Court notes numerous differences between the two cases, including the length of time spent litigating and scope of the issues litigated. The Court thus does not find the comparison persuasive.

Next, Uber objects to five specific sets of line items. First, with respect to those fees incurred after December 8, 2016, Uber asserts that plaintiffs' lodestar should be reduced by $631,425.50 for fees incurred after the Court issued its December 8, 2016 order granting Uber's motion to compel arbitration and stay litigation as to the non-opt-out plaintiffs. (Opp., at 5.) Uber contends that after this order significantly reduced the size of the putative class, it announced at an April 10, 2017 case management conference that this case had a maximum exposure of $1.4 million. (*Id.*, citing Stern Decl., Ex. A, at 7.) According to Uber, class counsel spent the next 18 months rejecting all efforts at settlement and mediation, namely by insisting that any settlement would have to apply to the entire class, including non-opt-outs. (*Id.* at 5-6.) Uber further argues that at the end of these 18 months, plaintiffs obtained compensation of $1.4 million anyway, rendering their efforts during these intervening months meaningless. (*Id.*)

The Court finds Uber's arguments unavailing.[4] If Uber could have pointed to a specific settlement offer, of any reasonable amount, that would have resolved the case, the Court might have been inclined to impose a cutoff date for the recovery of fees. However, Uber has not identified any

---

[4] The Court notes that it is unclear exactly what Uber proposes should be the cut-off date after which fees should be excluded. Although Uber first asserts that fees incurred after December 8, 2016 should be excluded, it does not explain why the date the order was issued is of any significance to the Court's determination on attorneys' fees. Uber then asserts that the lodestar should be reduced by $631,425.50 based on a calculation of fees incurred after the April 10, 2017 case management conference. (Opp., at 5, n.5.) Later in its opposition, Uber asserts that "post-August 2017 fees account for $631,425.50," which "were incurred . . . on a gamble." (*Id.* at 7.) The Court need not clarify this point, however, because it finds that none of these dates is an appropriate cut-off date for the calculation of the lodestar amount.

formal settlement offer, let alone an immediate offer for $1.4 million. Moreover, it was not unreasonable for class counsel to wait for a judicial decision on summary judgment and class certification before engaging in settlement discussions, nor was it unreasonable for class counsel to express interest in a global settlement with the hope that it might lead to a more favorable settlement on behalf of the class. Thus, the Court declines to exclude fees incurred after issuance of the December 8, 2016 order.[5]

Second, Uber argues that plaintiffs are not entitled to reimbursement of $17,242.50 in fees incurred due to negotiation regarding class counsel's engagement agreement. (Opp., at 7-8.) Plaintiffs concede that the Court should deny this line item if it would "further ensure that [c]lass counsel['s] lodestar is beyond objectively reasonable." (Reply, at 9.) The Court therefore excludes this fee.

Third, Uber argues that the lodestar should be reduced by $15,982.50 for fees incurred preparing March 26, 2018 discovery requests propounded on behalf of the non-opt-outs. (Opp., at 8.) Uber further argues that the lodestar should exclude $4,955 in fees incurred preparing punitive damages-related discovery. (*Id.*) Plaintiff counters that it did everything reasonably possible to exclude such fees from its calculations, including eliminating approximately 60%-70% of time spent on written discovery. (Reply, at 9.) However, Uber has identified time entries in class counsel's bills expressly referring to punitive damages-related discovery. (Dkt. No. 184-8 ("Greenfield Decl."), Ex. 8.) Moreover, class counsel's bills related to the March 2018 non-opt-out discovery do not consistently distinguish between written discovery was geared towards opt-outs and non-opt-outs. (*Id*, Ex. 7.) Thus, the Court finds that it is reasonable to exclude $20,937.50 ($15,982.50 + $4,955) in fees from the lodestar amount.

Fourth, Uber asserts that the Court should deduct from the lodestar amount $28,437.50 in fees incurred litigating the *O'Connor* case. (Opp., at 8.) According to Uber, class counsel's

---

[5] Plaintiffs provide a timeline of instances in which Uber maintained that plaintiffs' case was meritless, which they say is evidence that Uber was not pushing for settlement. (Reply, at 7-8.) The Court notes that Uber's counsel's vigorous defense of its client in the course of litigation does not suggest that it was not interested in settlement. However, it does result in an increase in reasonably incurred attorneys' fees.

8

objections to the settlements in *O'Connor* and *Yucesoy*, and it motions to intervene and shorten time, did not and would not have benefited plaintiffs. (*Id.* at 9.) As to the settlement objections, the Court finds that plaintiffs have put forth sufficient evidence to show that they reasonably believed that the settlements presented a serious risk of releasing plaintiffs' claims in this action. (Crabtree Decl., ¶¶ 7-11.) Indeed, notwithstanding Uber's claim that the settlements would not have released plaintiffs' claims, Judge Chen's order expressly acknowledged the import of his decision to the instant action. (*See id.*, Ex. B, at 26 ("By stipulating to the enforceability, drivers will be prevented from challenging the validity of the December 2015 Agreement, even in cases unrelated to employment misclassification such as whether arbitration would violate the National Labor Relations Act or on the ground that it denies a class member a contractual right to effectual relief, a claim that has been brought in *Congdon v. Uber Technologies, Inc.*, Case No. 16-cv-2499-YGR").) Further, plaintiffs' motion to intervene was in furtherance of its efforts to protect the interests of putative class members in this proceeding. (*Id.* ¶ 8.) Where class counsel's involvement in a separate litigation is directly related to plaintiffs' ability to proceed with and prevail in the case at hand, plaintiffs may seek to recover for such fees.[6]

As to the motion to shorten time, however, plaintiffs make little effort to explain how work on this specific motion stood to directly benefit putative class members in this case. The Court has examined the time entries related to the *O'Connor* litigation and identified three that expressly reference the motion to shorten time. (Greenfield Decl., Ex. 6, at 3.) The Court will exclude from the lodestar amount fees related to these time entries, which total $5,813 ($3,728 + $825 + $1,260).

Fifth, Uber contends that the lodestar should exclude the travel time of John Crabtree, lead counsel for the class, who made several trips from his residence in Florida to California for hearings, case management conferences, and a deposition. (Opp., at 9-10.) Mr. Crabtree's time entries reflect

---

[6] The cases cited by Uber do not hold to the contrary. In *Lota by Lota v. Home Depot U.S.A., Inc.*, 11-CV-05777-YGR, 2013 WL 6870006, at *9 (N.D. Cal. Dec. 31, 2013), this Court held that a prevailing party could not recover for work related to a separate bankruptcy proceeding where the work on the other litigation "was not related to the instant action." Likewise, *Safeworks, LLC v. Teupen Am., LLC*, C08-12197, 2010 WL 3033711, at *2 (W.D. Wash. July 29, 2010), the court declined to award fees for time spent litigating a different case in a different district "that d[id] not appear related to the prosecution of its claims against defendants."

$50,100 in fees accrued in connection with travel to San Francisco for six proceedings. (*See* Greenfield Decl., Ex. 10; Crabtree Decl., ¶ 46.) The vast majority show that Mr. Crabtree did not perform work for this case during his travel. (Greenfield Decl., Ex. 10.) Mr. Crabtree also billed time for layovers, which in some cases, significantly increased his travel time, and accordingly, his fees. (*Id.*) Moreover, the Court notes that many clients will not pay for time spent sitting on a tarmac or in traffic, where the attorney is not performing work on behalf of the client. (*See* Stern Decl. ¶ 15.) Additionally, many attorneys will negotiate flat rates for travel or engage in other work to minimize the cost to the client. The Court notes that three of Mr. Crabtree's time entries, totaling $5,775 in fees, indicate that Mr. Crabtree performed work on the case during his travel. The Court will therefore reduce the lodestar amount by $44,325 ($50,100 - $5,775) for travel time not spent performing work on behalf of the class.

Lastly, Uber argues that the hourly rates used to calculate the lodestar amount are unsupported by the evidence and unreasonable. The party seeking the fee has the burden of producing "satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah County,* 815 F.2d 1258, 1263 (9th Cir. 1987). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Courts also may rely on decisions by other courts awarding similar rates for work in the same geographical area by attorneys with comparable levels of experience. *See Nadarajah v. Holder,* 569 F.3d 906, 917 (9th Cir. 2009).

Here, class counsel is requesting hourly rates of between $200 and $750, depending on the person. (Motion, at 16-17.) In support of its request, plaintiffs offer (1) affidavits from Mr. Crabtree, Mr. Morrison, and Mr. August describing their legal experience and qualifications (Crabtree Decl., ¶¶ 53-60; Morrison Decl., ¶¶ 18-19; Dkt. No. 177 ("August Decl."), ¶ 39); (2) affidavits from three attorneys with similar experience to class counsel, whose comparable rates have been approved by courts in this district in similar litigation (August Decl., Exs. A-C); and

(3) an order from a Florida court approving rates of $750, $750, and $400 for Mr. Crabtree, Mr. Auslander, and Mr. Tackenberg, respectively (Crabtree Decl., Ex. C, at 7). Contrary to Uber's contentions, the affidavits provide a sufficient evidentiary basis to conclude that numerous other courts have approved similar hourly rates for attorneys comparable to class counsel, and for class counsel themselves. Further, even if class counsel's rates are at the "high end of the scale" (Opp., at 12), the rates are within the range routinely accepted by courts in this district. *See, e.g., In re MagSafe Apple Power Adapter Litig.*, No. 5:09-cv-01911-EJD, 2015 WL 428105, at *12 (N.D. Cal. Jan. 30, 2015) ("In the Bay Area, reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510[.]"); *In re High-Tech Employee Antitrust Litig*., No. 11-CV-02509-LHK, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (awarding partners rates "from about $490 to $975" and non-partners "from about $310 to $800"); *Banas v. Volcano Corp.,* 2014 WL 7051682, at *5 (N.D. Cal. 2014) (finding rates ranging from $355 to $1,095 per hour for partners and associates were within the range of prevailing rates).

Moreover, Uber's argument that high billers performed work that lower billers should have performed fails to persuade. Although a significant portion of legal research in this case was completed by attorneys billing at $700 per hour or higher, plaintiffs put forth evidence to support the reasonableness of its division of labor. Specifically, plaintiffs explain that class counsels' firms are small and lack a significant number of lower billers. (Dkt. No. 190 ("August Supp. Decl."), ¶ 28.) In light of this fact, as well as the complexity of the issues and plaintiffs' reasonable efforts to write off time (Dkt. No. 179, ¶ 5), the Court finds that class counsel's hourly rates are reasonable.

In sum, the Court finds that Uber has made valid arguments regarding the fees sought, but generally speaking, the lodestar amount is reasonable except for the following amounts, which will be excluded: $5,813 in fees incurred litigating the motion to shorten time in *O'Connor*; $17,242.50 in fees incurred negotiating class counsel's engagement agreement; $20,937.50 in fees incurred in connection with non-opt-out and punitive damages discovery; and $44,325 in fees for travel. Accordingly, plaintiffs' lodestar amount shall be adjusted to $1,251,749.

*3. Lodestar Multiplier*

Having determined the lodestar amount, the Court considers whether this is one of the "rare"

11

and "exceptional" cases in which the lodestar should be adjusted using a multiplier. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). Plaintiffs contend that they are entitled to a multiplier of 2.5 on the merits litigation and 1.5 on the fee litigation, based on the contingent nature of recovery and class counsel's skill. (Motion, at 18-21.) Defendant counters that the Court should either allow no multiplier or impose a negative one. (Opp., at 13-19.)

As to the contingent nature of the recovery, plaintiffs contend that a multiplier is warranted because they took on considerable risk prosecuting this case, including seeking fees, with no guarantee of compensation or reimbursement. (*See* Crabtree Decl., ¶ 52; August Decl., ¶ 7.) Specifically, plaintiffs contend that they took on the risk of not establishing an entitlement to a fee award, and spent unnecessary time researching and briefing entitlement, because Uber refused to tell class counsel whether it would challenge entitlement under section 1021.5. (Reply, at 14.)

In *Ketchum v. Moses,* the California Supreme Court held that "contingency cases *as a class*" are entitled to special consideration when it comes to fee enhancements. 24 Cal.4th at 1133 (emphasis in original). The court stated:

> The economic rationale for fee enhancement in contingency cases has been explained as follows: "A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans."

*Id.* at 1132 (citations omitted). Fee enhancements serve an important purpose of making contingency cases "economically feasible to competent private attorneys." *Id*. at 1133.

Here, the Court considers that two of the three firms representing plaintiffs are relatively small law firms. (Crabtree Decl., ¶ 52, Morrison Decl., ¶ 17.) Moreover, class counsel has been working on this matter for nearly three years, even after the size of the putative class, and plaintiffs' potential recovery, was substantially reduced as a result of the December 8, 2016 order. *See Kranson v. Fed. Express Corp.*, No. 11-CV-05826-YGR, 2013 WL 6503308, at *12 (N.D. Cal. Dec. 11, 2013) ("The Court recognizes that two years and six months is a significant amount of time to wait to be awarded fees, particularly for a small firm."). However, the lodestar accounts for all the

actual work. Plaintiffs do not put forth any other evidence to support a finding that the risk involved in this fee litigation, and in particular in establishing entitlement, was greater than the risk inherent in any action in which plaintiffs seek fees. *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 583 (2004) ("[T]he achievement of [plaintiffs'] litigation objective before fee litigation . . . would reduce somewhat the uncertainty over their 'successful party' status.").[7]

With respect to class counsel's skill, plaintiffs contend that they are entitled to a multiplier because they obtained a rare merits victory in a certified class action, while up against a well-funded defense by a premier law firm. (Motion, at 20.) Uber counters that plaintiffs have not demonstrated that this case required class counsel to demonstrate superior expertise. (Opp., at 15-16.) The Court does not doubt class counsel's skill and conviction in litigating this action to a successful judgment on behalf of the class. However, this case involved straightforward contract interpretation. Nothing more. *See Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1287 (N.D. Cal. 2014) (no fee enhancement was warranted where "the skill of counsel, [and] the difficulty and novelty of underlying legal issues," was subsumed in lodestar amount); *see also Van Gerwen,* 214 F.3d at 1045 n.2 ("results obtained are ordinarily subsumed in the lodestar determination and in most cases should not be considered in the multiplier step").[8] Thus, class counsel's skill does not weigh in favor of applying a multiplier.

The Court thus finds that this is not a "rare" or "exceptional" case warranting a multiplier. Further, given Uber's arguments, and on balance, an award of $1,251,749 is reasonable.

---

[7] Uber argues that the Court should not apply a multiplier because it would render the fee award even more disproportionate to the class award. (Opp., at 18.) As explained above, in a fee-shifting case like this one, attorneys' fees may be reasonable even if they exceed the classes' recovery. *See In re Galindo*, ADV 10-90473, 2013 WL 3389556, at *7 (B.A.P. 9th Cir. July 8, 2013).

[8] Uber argues that the Court could apply a negative multiplier because class counsel "did nothing to improve the position of the class after December 2016." (Opp., at 15.) As explained above, the Court disagrees that class counsel's efforts after the Court issued its December 8, 2016 order were not reasonable and performed in service of the putative class. Thus, this factor does not justify application of a negative multiplier, nor does it weigh against the granting of a multiplier to increase plaintiffs' recovery.

13

**B. Costs**

Federal Rule of Civil Procedure 54(d)(1) states that "costs—other than attorney's fees—should be allowed to the prevailing party." A prevailing party in an action brought under California law is entitled to recover costs that are "reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation" and "reasonable in amount." Cal. Code Civ. Proc. §§ 1032, 1033.5(c).[9] Reasonable reimbursable litigation expenses may include "those for document production, experts and consultants, depositions, translation services, travel, mail and postage costs." *In re Capacitors Antitrust Litig.*, No. 3:14-CV-03264-JD, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018). Plaintiffs argue that they are entitled to reimbursement of $60,525.19 for litigation costs and expenses incurred by class counsel through the conclusion of this matter. (Motion, at 25.) Defendant counters that plaintiffs should not be reimbursed for (1) $38,598.35 for out-of-state travel, (2) $10,000 paid to their fees expert, and (3) $315 for class counsel's lunch expenses. (Opp., at 21-22.)

First, as to out-of-state travel, plaintiffs seek (1) $3,086.72 for Mr. Crabtree's travel expenses incurred between August 10 and 12, 2017, and (2) $35,511.63 for travel expenses incurred between September 16, 2016 and May 27, 2017. (Greenfield Decl., Ex. 14.) The first category of travel expenses is likely attributable to the pre-filing conference regarding summary judgment, which took place on August 11, 2017. (Crabtree Decl., ¶ 42.) This Court's Standing Order in Civil Cases states that telephonic appearances for such conferences "will not be allowed." Judge Yvonne Gonzalez Rogers, Standing Order in Civil Cases, at ¶ 9 (updated April 2, 2019). It is therefore reasonable that Mr. Crabtree, as lead counsel in the case, traveled to attend this conference. However, plaintiffs have put forth limited evidence regarding the second category of travel expenses. During the period between September 16, 2016 and May 27, 2017, Mr. Crabtree has provided evidence that he traveled to San Francisco four times: two times for motion hearings, one time for the April 10, 2017 case

---

[9] In the alternative, plaintiffs seek to recover costs through the "common fund" doctrine. (Motion, at 25.) Because, as explained below, the Court finds that plaintiff has not provided sufficient evidence to demonstrate that its request for costs related to out-of-state travel, the fee expert retainer, and meals are reasonable, these costs are not recoverable through Rule 54 or through the common fund.

14

1  management conference at which subject matter jurisdiction was addressed, and one time for the
2  deposition of the "person most knowledgeable." (Crabtree Decl., ¶ 46.) Given the substantive
3  nature of these proceedings and Mr. Crabtree's key role in the case, it is reasonable for plaintiffs to
4  seek costs in connection with this travel. However, $35,511.63 in travel expenses for four cross-
5  country trips is excessive, in light of the fact that Mr. Crabtree incurred $3,086.72 in expenses during
6  *one* such trip in August 2017. Insofar as the $35,511.63 amount incorporates other travel, plaintiffs
7  have not provided evidence regarding the purpose of such travel. Thus, assuming Mr. Crabtree
8  traveled to San Francisco four times between September 16, 2016 and May 27, 2017, and assuming
9  costs of $3,086.72 per trip to San Francisco, the Court awards $12,346.88 for travel during this
10 period. Accordingly, the Court will subtract $23,164.75 from recoverable expenses.

Second, plaintiffs have not provided sufficient evidence to support a finding that the retainer paid to their fees expert is recoverable. CCP section 1033.5 allows for reimbursement for "fees of expert witnesses ordered by the court," which is not applicable here. Further, unlike a merits expert, class counsel's fees expert was not "necessary" to the further the goals of this litigation. Thus, the Court finds that plaintiffs are not entitled to costs for the $10,000 retainer paid to their fees expert.

Third, and likewise, plaintiffs are not entitled to recover for meal expenses of class counsel because they have provided little evidence to substantiate these expenses, including explaining who attended the lunches or why they were necessary to further the litigation. (*See* Greenfield Decl., ¶ 27, n.8.) The Court therefore declines to award fees for class counsel's meals.

Accordingly, plaintiffs are awarded $27,045.44 in reimbursable costs ($60,525.19-$23,164.75-$10,000-$315).

### C. Class Representatives' Service Awards

The Court has discretion to award class representatives service payments for work they did on behalf of the class. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases."). The criteria courts consider in determining whether to approve an incentive award include: the risk to the class representative in commencing suit, both financial and otherwise; the notoriety and personal difficulties encountered by the class representative; the amount of time and effort spent by the class representative; the

15

duration of the litigation; and the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *In re Cellphone Fee Termination Cases*, 186 Cal.App.4th 1380, 1394-95 (2010) (quoting *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (2009)).[10]

Plaintiffs seek an incentive award of $5,000 for each of the four named plaintiffs in this action. (Motion, at 24.) The Ninth Circuit has repeatedly held that $5,000 is a reasonable amount for an incentive award. *See Hawthorne v. Umpqua Bank*, No. 11-CV-06700-JST, 2015 WL 1927342, at *8 (N.D. Cal. Apr. 28, 2015) ("Many courts in the Ninth Circuit have also held that a $5,000 incentive award is 'presumptively reasonable.'"); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015) (district court did not abuse discretion in approving $5,000 incentive awards for each of the nine class representatives). Moreover, named plaintiffs have been litigating this case for years, during which time they have reviewed pleadings and motions, consulted with class counsel, were each deposed, and conducted document searches. (Dkt. Nos. 180-183.) Further, even if Uber was not plaintiffs' employer, Uber controlled plaintiffs' access to the app. It is therefore reasonable to infer that by pursuing this litigation, named plaintiffs faced a risk of retaliation from Uber. (Motion, at 24.)[11]

In addition, plaintiffs have put forth sufficient evidence that the incentive award is proportional to the total amount obtained for the class. Each $5,000 incentive award represents just 0.25% of the total recovery, which is reasonable in light of the expenses and risks named plaintiffs have incurred in this action. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457 (9th Cir. 2000)

---

[10] Uber notes that it is unclear whether plaintiffs are allowed incentive awards in cases that do not involve common funds, emphasizing that here, there is only a judgment that is the sum total of the class members' individual recoveries. (Opp., at 20, n.14.)

[11] Uber argues that the $5,000 incentive award is significantly more than the named plaintiffs otherwise stand to recover based on the number of minimum fare rides performed through the Uber platform. (Opp., at 19, citing Dkt. No. 167-1, at 2). However, comparing the named plaintiffs' compensation to the proposed incentive award makes little sense in this context, where compensation is proportionate to named plaintiffs' activity on Uber's platform. The incentive award is intended to compensate plaintiffs "for the expense or risk they have incurred in conferring a benefit on other members of the class," regardless of how often they used the Uber platform. *In re Cellphone Fee Termination*, 186 Cal.App.4th at 1394 (quoting *Clark v. American Residential Services LLC*, 175 Cal.App.4th 785, 806 (2009)).

1  (approving incentive awards of $5,000 each to two class representatives in $1.725 million settlement, which each comprised 0.29% of total settlement); *Alvarez v. Farmers Ins. Exch.*, No. 3:14-CV-00574-WHO, 2017 WL 2214585, at *1 (N.D. Cal. Jan. 18, 2017) (finding $10,000 service awards fair and reasonable where each one was approximately 0.002% of the settlement value); *Bolton v. U.S. Nursing Corp.,* No. C 12-4466 LB, 2013 WL 5700403, at *6 (N.D. Cal. Oct. 18, 2013) (awarding single service award of $10,000 where total recovery was $1.7 million). Thus, plaintiffs' request for a $5,000 incentive award for each named plaintiff is reasonable and appropriate.

### III. CONCLUSION

Based upon the foregoing:

(1) Uber shall pay class counsel $1,251.749.00 total as reasonable attorneys' fees;

(2) Uber shall pay class counsel $27,045.44 total as reimbursable costs;

(3) plaintiffs Matthew Clark, Ryan Cowden, Dominicus Rooijackers, and Jason Rosenberg are awarded $5,000.00 each in incentive awards.[12]

**IT IS SO ORDERED.**

Dated: May 31, 2019

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[12] Uber filed a motion to seal in connection with its opposition brief, seeking to seal portions of the brief and an accompanying declaration. (Dkt. No. 185.) According to Uber's motion to seal, plaintiffs designated an August 15, 2017 email containing settlement communication as "Confidential" pursuant to the parties Stipulated Protective Order, which permits the parties to designate as confidential any document that contains information protected under Federal Rule of Civil Procedure 26(c). (*Id*. at 2.) Uber included quotations from the email in (1) its opposition, at page 6, lines 12-18, and (2) the declaration of William L. Stern in support of its opposition, at paragraph 10.

In Mr. August's supplemental declaration, he states that plaintiffs "would have preferred [] keeping our settlement discussions confidential," but given that they were before the Court, plaintiffs wanted the Court to see the full exchange. (August Supp. Decl., ¶ 18.) The email, in its unredacted form, was attached as Exhibit G to Mr. August's supplemental declaration. Thus, Uber's motion to seal is **DENIED**.

17